IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Individually and as Subrogee of KENARD MANAGEMENT CORPORATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 09 CV 2829 |
| CAPITOL TRANSAMERICA CORPORATION, d/b/a CAPITOL INDEMNITY CORPORATION, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Defendant, CAPITOL TRANSAMERICA CORPORATION d/b/a CAPITOL INDEMNITY CORPORATION ("Capitol"), by its attorneys, SWANSON MARTIN & BELL, LLP, files this Memorandum of Law in Support of its Motion for Partial Summary Judgment against the Plaintiff, PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Individually and as Subrogee of KENARD MANAGEMENT CORPORATION ("PSM"), under Federal Rules of Civil Procedure 56, and in support thereof, states as follows:

**I.   Background**

PSM and Capitol have filed cross complaints for declaratory judgment contesting Capitol's duty to defend Kenard in the underlying litigation entitled *Doyle v. Kenard,* and pending in the Circuit Court of Cook County as Docket No. 07 L 1988 (the Underlying Litigation). As alleged in the Underlying Litigation, Michael Doyle was fatally injured when he fell from the porch of an apartment located at 3180 North Clark Street, Chicago, Illinois, on January 1, 2007. (Exhibit C to Statement of Material Facts, Paragraph 7.) Kenard managed the

apartment building at the time Doyle fell, under a contract with Belmont Clark Partners, the owners of the building. (Exhibit C to Statement of Material Facts, Paragraph 1.) The plaintiff alleges that Kenard knew that the porch railing was unsafe and negligently permitted tenants and their guests to use the porch without modifying the railing. (Exhibit C to Statement of Material Facts, Paragraphs 7 and 8.)

PSM issued business owners' general liability insurance to Kenard pursuant to Belmont Clark Partners' contractual obligation to purchase such insurance. (Exhibit E to Statement of Material Facts.) The PSM policy listed the accident site as one of the insured locations. (Exhibit E to Statement of Material Facts, Page 5.) Capitol issued general liability insurance to Kenard. (Exhibit F to Statement of Material Facts.) The Capitol policy did not list the accident site as an insured location, but only the address of Kenard's office.[1] (Exhibit F to Statement of Material Facts, Pages 1-3.) The parties dispute whether Capitol's policy is excess over PSM's policy.

Capitol received notice of the accident on January 11, 2007, from Heil and Heil Insurance Agency. (Exhibit H to Statement of Material Facts, Pages 1-3.) Capitol notified Kenard, retained a private investigator, and retained an attorney to defend the potential action. (Exhibit H to Statement of Material Facts, Pages 4; 6-11; 16-18.) Kenard did not respond to inquiries from Capitol's investigator. (Exhibit H to Statement of Material Facts, Pages 19-21.) When the underlying suit was filed and the attorney Capitol retained attempted to file an appearance on behalf of Kenard, the attorney learned that another attorney had already filed an appearance for Kenard. (Exhibit H to Statement of Material Facts, Page 18.) This was the first notice that Capitol had that any other insurance carrier may be involved in Kenard's defense.

---

[1] Capitol also issued an Umbrella General Liability Insurance policy to Kenard. (Exhibit D to Statement of Material Facts.) The parties do not dispute that Capitol's umbrella policy is an actual excess policy.

2

Capitol inquired further of Kenard and ultimately received the response that Kenard considered the PSM policy to be primary and the Capitol policy to be excess. Kenard stated that it relied upon PSM for its defense in the underlying suit. (Exhibit H to Statement of Material Facts, Page 22.) Kenard's President, Geraldine Lichterman, stated in a letter sent letter to Mr. Russo, Capitol's investigator:

> As you may know, the Management Agreement associated with the property where the accident occurred required the owner to secure and maintain insurance to protect the owner and the manager (Kenard Management Corporation).
>
> A package insurance policy was put into effect for the period June 12, 2006 to June 12, 2007, with Public Service Mutual Insurance Company, Policy No: BW018134. Public Service Mutual Insurance Company selected Bradford S. Purcell, Purcell & Wardrope, 10 South LaSalle Street, Suite 1200, Chicago, Illinois 60603-1013, to defend our interests in this case. The Public Service Mutual Insurance Company policy has a $1 million limit for Commercial General Liability. If you need a copy of this policy, please let me know and I will arrange for a copy to be sent to you.
>
> I understand that the insurance provided to Kenard Management Corporation by Capitol Insurance Company consists of a Commercial General Liability policy, Policy No.: CP00214424, policy period: November 1, 2006 to November 1, 2007. In addition, Capitol Indemnity Corporation provides an Umbrella Liability policy with a $1 million limit. It is my understanding that both of these policies are excess over any other insurance we may have. We are assuming the policy with Public Service Mutual Insurance Company is primary insurance. Brad Purcell has recently requested information regarding any other insurance which we maintain. We will provide him with additional information regarding the policies with Capitol Insurance Company. Should you desire to speak directly with Mr. Purcell, he can be reached at 312-427-3900.

(Exhibit F to Statement of Material Facts, Page 22.)

Upon further examination of its policy, in light of the existence of the PSM policy, and in light of Kenard's tender of its defense to PSM and its direction to Capitol not to defend, Capitol did not participate in the defense of the underlying litigation.

On May 8, 2009, PSM filed the pending declaratory judgment action. On July 14, 2009, Capitol filed a counterclaim for declaratory judgment.

3

### II.     Summary of Argument

Capitol does not owe a duty to defend Kenard in the Underlying Litigation because (1) Kenard made a targeted tender of its defense to PSM and advised Capitol that it did not look to Capitol for its defense; and (2) the real estate endorsement to the Capitol policy makes the Capitol insurance excess over any other insurance for liability arising out of Kenard's property management.

PSM's claims that Capitol must share in indemnifying Kenard and that Capitol's alleged failure to contribute to settlement in the underlying case constitutes bad faith are premature because no indemnification funds have been expended. Those issues will not be addressed in the motion for partial summary judgment.

### III.    Legal Standard

#### A.  Summary Judgment

As set forth recently in *Shelter General Ins. Co. v. Zurich Direct,* 2008 WL 4449873 (S.D. Ill. 2008), summary judgment is proper where the pleadings and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Oats v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of  law.  *Santaella v. Metro. Life Ind. Co. ,* 123 F. 3d 456, 461 (7th Cir. 1997) (citing *Celotex,* 477 U.S. at 323).  In reviewing a summary judgment motion, the court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial.  *Celex Group, Inc. v. Executive Gallery, Inc.,* 877 F. Supp. 1114, 1124 (N.D. Ill. 1995).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky,* 28 F. 3d 666, 670-671 (7th Cir. 1994), *aff'd,* 51 F.3d 276 (citing *Celotex,* 477 U.S. at 324). No issue remains for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249-250 (citations omitted); *accord, Starzenski v. City of Elkhart,* 87 F. 3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.,* 23 F. 3d 1745, 178 (7th Cir. 1994).

### B. Applicable Law

The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by summary judgment. *Jupiter Aluminum v. Home Insurance Co.,* 225 F. 3d 868 (7th Cir. 2000). The interpretation of terms in an insurance policy is a question of state contract law. *Erie Insurance Group v. Sear Corp.,* 102 F. 3d 889, 892 (7th Cir. 1996). A federal court sitting in diversity must look to the conflict-of-law rules of the forum state for the applicable substantive law. *Jupiter Aluminum,* 225 F. 3d at 873, citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U. S. 487, 496 (1941). In this case, this Court must look to Illinois' conflict-of-law rules. When, as here, an insurance policy lacks a choice of law provision, Illinois courts employ a "most significant contacts" test to determine the governing substantive law for the contract. *Jupiter Aluminum,* 225 F. 3d at 873. "Absent an express choice of law, insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to

the general contract." *Jupiter Aluminum,* 225 F. 3d at 873. Citing *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.,* 166 Ill. 2d 520, 526-527 (1995). "While all of these factors must be considered in the choice of law analysis, the location of the insured risk is given special emphasis." *Jupiter Aluminum,* 225 F. 3d at 873, citing *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Illinois,* 268 Ill. App. 3d 566, 664 (1st Dist. 1994).

In this case, Kenard is an Illinois corporation residing in Illinois. The site of the accident is in Illinois. Thus, Illinois substantive law applies to this case.

## IV. Argument

### A. Kenard tendered the defense of the underlying suit to PSM and therefore Capitol owes no duty to defend.

Illinois law permits an insured to select which of two or more available insurance carriers must defend it. This is called a "targeted tender." Under Illinois law, if more than one insurance policy may cover the claim in question, the insured may select which insurance carrier will defend and indemnify the insured's interests. *John Burns Construction Company v. Indiana Insurance Company,* 189 Ill. 2d 570, 574 (2000). When the insured has selected which insurer will represent it, the coverage otherwise afforded by the other insurer is not triggered or available because the insured has not invoked that coverage. *John Burns,* 189 Ill. 2d at 578. The selected insurer may not take advantage of an "other insurance" clause in its policy to require the insurance carrier whose coverage is not invoked to respond to the claim. *John Burns,* 189 Ill. 2d at 578.

When the insured designates which of its insurers will defend it, the duty to defend falls solely on the selected insurer and that insurer may not, in turn, seek equitable contribution from the other insurer or insurers who were not designated by the insured. *The Cincinnati Companies*

*v. West Americana Insurance Company,* 183 Ill. 2d 317, 324 (1998); *Institute of London Underwriters v. Hartford Fire Insurance Co.,* 234 Ill. App. 3d 70, 78-80 (1st Dist. 1992).

Kenard tendered the defense to PSM. That the tender is consistent with Kenard's intent in obtaining the two policies demonstrates that Kenard's tender was reasonable, although it need not be reasonable to be effective.

In this case, Kenard made a targeted tender to PSM. Kenard could not have made its intent more clear. Kenard made only limited, early responses to Russo, Capitol's investigator. Ultimately, seven months after the accident, Kenard's president wrote to Capitol, through its investigator, that Kenard looked to PSM for its defense in this case. (Exhibit H to Statement of Material Facts, Page 22.) In that letter, Ms. Lichterman stated she understood that the PSM policy was primary.

Kenard's understanding that the PSM policy was primary is consistent with reasonable business practices and the parties' intent. The property management agreement required the property owner to obtain insurance coverage for Kenard to cover Kenard's liabilities arising from managing the owner's property. That coverage was obtained from PSM. It makes good business sense that the insurance obtained pursuant to the property management agreement would respond first to liability arising from a condition on the owner's property.

Kenard's understanding that the PSM policy is primary is also consistent with the relative premiums paid for the two policies. The total annual premium for the PSM policy was $28,929.00. (Exhibit E to Statement of Material Facts, Page 2.) The total annual premium for the Capitol policy was $5,252.00. (Exhibit F to Statement of Material Facts, Page 1.) PSM's premium, which was more than five times larger than Capitol's, demonstrates that PSM intended to take on a higher risk than Capitol did. *See Certain Underwriters of Lloyds v. General*

*Accident Ins. Co. of America,* 699 F.Supp. 732, 738 (D.D. Indiana 1988) (recognizing that primary insurance carriers charge larger premiums than excess carriers for an equivalent amount of coverage because the obligations to the insured are different); and, *see, United States v. Leahy,* 464 F. 3d 773, 782 (7th Cir. 2007) (recognizing that insurance carriers assuming a higher risk charge a higher premium for equivalent workers' compensation coverage).

Kenard's understanding that the PSM policy is primary is consistent with the properties itemized in the respective policies. In the description of the premises insured, the PSM policy lists three buildings that Kenard manages. (Exhibit E to Statement of Material Facts, Page 5.) In contrast, the insured premises itemized in the Capitol policy is Kenard's office at 328 South Jefferson. (Exhibit F to Statement of Material Facts, Pages 1-3.) The Capitol policy does not list any individual properties that Kenard manages.

Finally, Kenard's understanding that the PSM policy is primary is consistent with the Real Estate Management Endorsement in the Capitol policy, which states that the Capitol insurance is "excess over any other valid and collectible insurance available" to Kenard for "liability arising out of [Kenard's] management of property for which [Kenard] is acting as real estate manager. (Exhibit F to Statement of Material Facts, Page 62.) In the present case, Kenard managed the property where the accident occurred. Kenard's alleged liability arises directly out of its management of the property. Thus, based upon the express policy language, the Capitol policy is excess over the PSM policy.

PSM may argue that each policy contains an "other insurance" clause, that the clauses are incompatible and cancel each other out, and that, therefore, Kenard's targeted tender does not relieve Capitol of the obligation to defend Kenard. The PSM policy states,

8

> "If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not."

(Exhibit E to Statement of Material Facts, Page 63.)

The Capitol policy states,

> "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage … This insurance is excess over … Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the products and completed operations, for which you hve been added as an additional insured by attachment of an endorsement."

(Exhibit F to Statement of Material Facts, Page 51. )

Illinois courts have squarely addressed and rejected this argument. In *Institute of London Underwriters v. The Hartford Fire Insurance Company,* 234 Ill. App. 3d 70, 77 (1st Dist. 1992), the court stated that liabilities under the "other insurance" clause "are not triggered until the insurer becomes obligated to pay or defend. … If the policy is never triggered, the issue of liability under the 'other insurance' clause does not arise." *Institute of London,* 234 Ill. App. 3d at 77, quoted with approval in *John Burns Construction Company v. Indiana Insurance Company,* 189 Ill. 2d 570, 576 (2000).

Kenard did not tender the defense of the suit to Capitol. Thus, the Capitol policy was not triggered and its potential liability under the "other insurance" clause does not arise. Therefore, Capitol does not owe a duty to defend Kenard in the underlying litigation.

An important corollary flows from the fact that Kenard tendered the defense of the underlying suit to PSM. PSM lacks standing as Kenard's subrogee to bring a declaratory judgment action against Capitol. Kenard tendered the defense to PSM. PSM cannot now stand in Kenard's shoes and demand that Capitol defend the underlying suit. As a subrogee, PSM stands in the shoes of its subrogor, Kenard. Since Kenard tendered to Capitol and did not

9

activate Capitol's duty to defend, PSM cannot take an opposite position. Therefore, the portion of the complaint that PSM brings as Kenard's subrogee, asserting that Capitol owes a duty to defend Kenard in the underlying suit, must be dismissed.

### B. The Capitol policy is excess over the PSM policy and therefore Capitol owes no duty to defend Kenard.

If this Court determines that Kenard's tender of defense is effective, this Court need look no further in its analysis. If, however, this Court decides to examine the terms of the Capitol policy, the terms of the Capitol policy make it excess over the PSM policy.

The Real Estate Property Management endorsement in the Capitol policy states that:

"[w]ith respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you."

Kenard was named as an insured on the PSM policy. The PSM insurance is "other valid and collectible insurance" available to Kenard for Kenard's liability arising out of the management of the building located at 3180 North Clark Street. Thus, based upon the language of the Capitol property management endorsement, the Capitol policy is excess over the PSM policy.

Illinois has interpreted a property management endorsement with markedly similar language and has held that insurance containing that endorsement is excess over other available coverage. *Hartford Fire Insurance Co. v. Everest Indemnity Insurance Co.* 369 Ill. App. 3d 757 (1st Dist. 2006.) In *Hartford,* a fire occurred at 69 West Washington, in Chicago, Illinois. The building was managed by U.S. Equities. Hartford issued a liability insurance policy to U.S. Equities, which contained the same "other insurance" clause and the same property management endorsement contained in the Capitol policy. The Hartford endorsement stated: "[w]ith respect to your liability arising out of your management of property for which you are acting as a real

10

estate manager, this insurance is excess over any other valid and collectible insurance available to you." *Hartford,* 369 Ill. App. 3d at 758. Everest issued a policy to Aargus Security Services, the company responsible for protecting the building against fire, theft, damage, and trespassing. *Hartford,* 369 Ill. App. 3d at 758-759. The Everest policy named U.S. Equities as an additional insured, as required by Aargus' contract. *Hartford,* 369 Ill. App.3d at 759. The reviewing court, interpreting the endorsement language, affirmed the trial court's ruling that the Hartford policy was excess over the Everest policy and ruled that Hartford did not owe a duty to defend U.S. Equities. *Hartford,* 369 Ill. App. 2d at 760, 764.

Other courts have reached similar results. In *Woodson v. A & M investments, Inc.,* 591 S. 2d 1345 (La. 1991), the Court of Appeal of Louisiana interpreted the same insurance endorsement language. *Woodson,* 591 S. 2d at 1347. In *Woodson,* an injury occurred when a portion of ceiling fell striking and injuring several people. Pelican Insurance Company issued a general liability policy to the property owner. *Woodson,* 591 S. 2d at 1346. South Carolina Insurance Company issued a commercial general liability policy to the property manager, which contained a property management endorsement stating: "[w]ith respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you." *Woodson,* 591 S. 2d at 1347. The *Woodson* court enforced the endorsement and ruled that the South Carolina policy was excess over the Pelican policy, explaining, "[t]he intent to provide only excess insurance under the present circumstances is clearly expressed by the endorsement contained in the South Carolina policy. Clearly, by literal application of the terms of the policies, Pelican provides primary coverage and South Carolina provides only excess coverage." *Woodson,* 591 S. 2d at 1348.

11

In *Harleysville Insurance Co. v. Church Insurance Co.,* 892 A. 2d 356 (Del. 2005), a man was injured when a fire escape ladder fell on his head. The property was owned by Cathedral Community Services and managed by Capitol Management Company. Church Insurance issued a general liability policy to Cathedral, which named Capitol Management as an additional insured. Harleysville Insurance issued a general liability policy to Capitol Management, which contained the same property management endorsement at issue in this case. That endorsement made the Harleysville insurance excess over other insurance for liability arising out of Capitol Management's management of property. *Harleysville,* 892 A.2d at 357. The *Harleysville* court ruled that the Harleysville policy was clearly excess over the Church policy. It further ruled that Harleysville would not be required to participate in Capitol Management's defense, except that Harleysville waived that defense by participating without reservation in Capitol Management's defense. *Harleysville,* 892 A.2d at 361.

Other courts also enforced the real estate management clause at issue in this case. *See, American Economy Insurance Co. v. Acceptance Insurance Co.,* 2004 WL 1080213 (Idaho Dist. 2004) (enforcing the same endorsement clause); and *State Farm Fire and Casualty Co. v. American Economy Insurance Co.,* 204 WL 521784 (D. Colo. Dist. 2006) (enforcing the same endorsement clause).

PSM may point to *Peerless Insurance v. Vermont Mutual Insurance,* 151 N.H. 71, 849 A.2d 100 (2004), which interprets a similar real estate endorsement as a simple "other insurance" clause. *Peerless* does not apply to the present case because Illinois law is contrary. Illinois law enforces the property management endorsement.

PSM may argue that the property management endorsement clause should be read as simply an additional "other insurance" clause. Thus, PSM may argue, the single "other

12

insurance" clause in the PSM policy cancels out the two "other insurance" clauses in the Capitol policy as mutually repugnant. That interpretation should be rejected.

"In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement." *Outboard Marine Corp. v. Liberty Mutual Insurance Co,* 154 Ill. 2d 90, 108 (1992); *Hobbs v. Hartford Insurance Co. v. Hartford Insurance Co. of the Midwest,* 214 Ill. 2d 11 (2005). "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract." *Outboard Marine Corp.,* 154 Ill. 2d at 108. "If the words in the policy are clear and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Travelers Insurance Co. v. Eljier Manufacturing, Inc.,* 197 Ill. 2d 278, 292-293 (2001).

Illinois law requires the court to interpret each clause in a contract as having independent meaning. An interpretation that renders a clause redundant and superfluous is to be rejected. *Great Central Insurance Co. v. Wascomat of America,* 234 Ill. App. 3d 150, 155 (1st Dist. 1992). Courts shall not interpret the provisions of an insurance policy in a way that renders other provisions redundant or meaningless. *Grinnell Mutual Reinsurance Co. v. LaForge,* 369 Ill. App. 3d 688, 697 (4th Dist. 2006).

In this case, the terms of the real estate endorsement are clear and not ambiguous. For that reason, the endorsement should be enforced according to its terms. Moreover, the real estate endorsement is not redundant. In the context of the entire policy, the endorsement carries a separate meaning, specific to insureds who manage property. It means that, for property

13

managers, as opposed to other insureds, the Capitol policy is excess over other available insurance to address liability arising from property management. Interpreting the real estate endorsement as simply another "other insurance" clause would make the clause redundant and meaningless, because the Capitol policy already contains one "other insurance" clause. Making the endorsement clause redundant is contrary to Illinois law. For that reason, also, the real estate endorsement must be interpreted according to its terms.

Construing the Capitol policy as a whole demonstrates that the real estate endorsement fundamentally furthers the intent of both parties to the insurance policy -- Kenard and Capitol. It makes the Capitol policy primarily responsible for Kenard's ordinary business activities but not for its property management liability. In return for that limitation, Kenard paid a premium that was substantially smaller than would have been required to cover its property management liability, as illustrated by the premium PSM charged for such coverage. Kenard knew that the PSM policy covered it for any property management liability. Kenard knew that the PSM policy listed the properties that Kenard managed, while the Capitol policy did not. Both Kenard and Capitol knew that the Capitol policy listed Kenard's office address as the only insured location. Kenard knew that the PSM premium was five times larger than the Capitol premium. Capitol knew that its premium was much lower than it would have been if it Capitol and Kenard intended Capitol to provide the primary insurance covering Kenard's property management liability. All of those facts demonstrate that the Capitol policy fulfills the intent of the parties.

For those reasons, the Capitol policy is excess over the PSM policy.

**V.     Conclusion**

Capitol does not owe a duty to defend Kenard in the underlying suit for two independent reasons. First, Kenard tendered the defense to PSM and did not activate the Capitol policy.

Second, the Capitol policy contains a real estate management endorsement providing that the Capitol policy is excess over the PSM policy. Each reason forms a separate basis requiring partial summary judgment in favor of Capitol on the issue of its duty to defend Kenard in the underlying suit.

WHEREFORE, CAPITOL TRANSAMERICA CORPORATION d/b/a CAPITOL INDEMNITY CORPORATION, respectfully requests this Court to enter summary judgment in its favor and against PUBLIC SERVICE MUTUAL INSURANCE COMPANY,

    A. Declaring that :

        1. PSM's policy provides coverage for the claims asserted against Kenard in the underlying litigation;

        2. PSM is obligated under its Businessowner's Liability policy to defend and indemnify Kenard in connection with the claims asserted in the Underlying Litigation;

        3. PSM's Businessowner's Liability policy is the primary policy for the claims asserted against Kenard and PSM (not Capitol) has the primary obligation to defend and indemnify Kenard;

        4. Capitol's Commercial General Liability policy and its Umbrella policy are excess to PSM's Businessowner's Liability policy ;

        5. Capitol is not obligated to defend Kenard in the Underlying Litigation so long as PSM is obligated to do so under its Businessowner's Liability policy;

        6. PSM must continue to provide a defense for Kenard in the Underlying Litigation, and it may not withdraw from providing that defense;

7. Capitol is not obligated to indemnify Kenard for the claims in the Underlying Litigation unless and until PSM has exhausted its policy limits and Kenard has requested Capitol to participate in indemnifying Kenard in the Underlying Litigation; and

8. Capitol is not required to reimburse PSM for the fees and costs PSM has incurred in connection with the Underlying Litigation.

B. Awarding Capitol the costs herein expended and for such other and further relief that this Court deems just and proper.

Respectfully submitted,

CAPITOL TRANSAMERICA CORPORATION d/b/a CAPITOL INDEMNITY CORPORATION, Defendant, by SWANSON, MARTIN & BELL, LLP, its attorneys

/s/Linda E. Spring
SWANSON, MARTIN & BELL, LLP
1860 West Winchester Road, Suite 201
Libertyville, Illinois 60048
Tel: 847-949-0025
Fax: 847-247-0555

Linda E. Spring/6185966
SWANSON, MARTIN & BELL, LLP
1860 West Winchester Road, Suite 201
Libertyville, Illinois 60048
Tel: 847-949-0025
Fax: 847-247-0555