UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

NO. 2009-CV-2829
(HONORABLE JUDGE GRADY)

| | |
|---|---|
| PUBLIC SERVICE MUTUAL INSURANCE COMPANY, | ) ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CAPITOL TRANSAMERICA CORPORATION, d/b/a CAPITOL INDEMNITY CORPORATION, | ) ) |
| Defendant. | ) |

## <u>PLAINTIFFS' RESPONSE TO DEFENDANT CAPITOL TRANSAMERICA CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

PUBLIC SERVICE MUTUAL INSURANCE COMPANY ("PSM"), by and through its undersigned attorneys, responds to and opposes to CAPITOL TRANSAMERICA CORPORATION's ("CAPITOL") Motion for Partial Summary Judgment. PSM also cross-moves, under Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Count I of PSM's Complaint and Capitol's Counterclaim. The Court must deny Capitol's Motion for Partial Summary Judgment and enter judgment in favor of PSM on Count I and Capitol's Counterclaim because:

1) Capitol is a co-primary insurer and it must immediately defend and indemnify Kenard Management Corporation (hereinafter "Kenard") in the underlying wrongful death case;

2) The "Targeted Tender" Rule does not apply under the facts and circumstances of this case, and even if it did, Capitol's reliance upon the rule is misplaced because Kenard never made a knowing and intentional targeted tender to PSM but instead tendered defense and indemnity to

both insurers. *Ex. 2 Affidavit of Geraldine Lichterman, President of Kenard*;

3)   The applicable "Other Insurance" clauses are mutually repugnant and, as a result, Capitol is obligated to pay 50% of the defense costs that have been incurred and will be incurred to defend its insured in the underlying litigation. *See Ohio Cas. Ins. Co. v. Oak Builders, Inc.* 373 N.E.2d 992, 996 (Ill. App. Ct. 2007);

4)   Even assuming, *arguendo*, that Capitol did not receive a "tender" or request for a defense until May 11, 2009, *Ex. 2, Letter to Capitol dated May 11, 2009*, Capitol is liable for its 50% share of the pre-tender defense costs. *See Westchester Fire Ins. Co. v. G. Heilman Brewing Co., Inc.*, 747 N.E.2d 955, 968 (Ill. App. Ct. 2001); *Pittway Corp. v. American Motorists Ins. Co.*, 370 N.E.2d 1271, 1277 (Ill. App. Ct. 1977); and

5)   In the alternative, Capitol must be solely responsible to defend Kenard because PSM has offered the maximum limits of its policy ($1,000,000) and Capitol has refused to offer its policy limits (a total of $2,000,000).*Ex. 8, Policy Limit Offer*;

## STATEMENT OF FACTS[1]

This declaratory judgment action arises out an incident that occurred at a property owned by Belmont Clark Partners, located at 3180 North Clark Street in Chicago, Illinois. Belmont Clark Partners entered into a Management Agreement with Kenard under which Kenard agreed to manage the above property. *Defendant's Exhibit D*. The management agreement required Kenard to obtain liability insurance for itself and Belmont Clark Partners. *Defendant's Exhibit D*.

Kenard obtained liability insurance policies from both PSM and Capitol for claims arising out of the 3180 North Clark Street property. PSM issued a Businessowners' Liability Coverage insurance policy to "Kenard Management Corp & Corus Bank #141," bearing Policy No. BW 018134, with effective dates from 6/1/06 to 6/12/07, affording

coverage of $1,000,000.00 per occurrence (hereinafter "PSM's policy"). *Defendant's Exhibit E.* The PSM policy contains the following provisions:

### a. Coverages – Business Liability

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage," "personal injury", or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

> (1) The amount we will pay for damages is limited as described in Section D – Liability And Medical Expenses Limits of Insurance; and

> (2) Our right and duty to defend end when we have used up the applicable limits of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. . . .

a. This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the policy period. . .
>
> . . .

### H. Other Insurance.

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss

---

[1]     The facts contained herein are contained in the accompanying Response to Plaintiff's Statement of Material Facts.

or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of insurance.

2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

3. When this insurance is excess we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*Defendant's Exhibit  E, at pp. 9, 63.*

Capitol issued two policies for Kenard: a primary policy and an umbrella policy. The Commercial General Liability policy, bearing Policy No. CP00214424, with effective dates from 11/1/2006 to 11/1/2007, afforded coverage of $1,000,000.00 per occurrence (hereinafter the "Capitol's primary policy"). *Defendant's Exhibit* F.  Capitol's primary policy contains the following provisions:

**INSURING AGREEMENT**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section II – Limits of Insurance; and

(2) Our right and duty to defend ends when have used up the applicable limits of insurance in the payment of

judgments or settlements under Coverages A or B or medical expenses under Coverage C. . . .

a.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)  The "bodily injury" or "property damage" occurs during the policy period. . .

. . .

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

. . .

d.   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent

. . .

**OTHER INSURANCE**

a.  Primary Insurance

This insurance is primary except when b. below apples. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.

b.  Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, installation Risk or similar coverage for "your work;"

(b)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft, to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily injury and property damage liability;

(2)  Any other primary insurance available to you covering liability for damages arising out of the premises, or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

a.  Method of sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*Defendant's Exhibit F, at pp. 41, 51.*  The Capitol primary policy also contains the

following Real Estate Management Endorsement:

### Endorsement – Real Estate Property Managed

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part

This insurance does not apply to "property damage" you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

*Defendant's Exhibit F, at p. 62.*

Capitol's Commercial Umbrella General Liability policy for Kenard, bearing Policy No. CP00214424, with effective dates from 11/1/2006 to 11/1/2007, afforded additional coverage of $1,000,000.00 per occurrence (hereinafter the "Capitol Umbrella policy"). *See Defendant's Exhibit* G.

On January 1, 2007, Michael Doyle fell from a porch at 3180 North Clark Street in Chicago, Illinois and sustained fatal injuries. It is alleged that he slipped and fell through an opening in a guardrail on a third floor balcony during a New Years Eve Party.

Capitol received notice of the potential claim against Kenard on January 11, 2007. *Defendant's Exhibit H, at pp. 1-3.* The loss was originally reported by Kenard to Heil and Heil Insurance Agency, Inc. who then notified Capitol. *Id.*

Upon receipt of this notice, Capitol sent a responsive correspondence to Kenard on January 16, 2007, acknowledging the notice of loss and instructing Kenard to refrain from communicating with certain outside entities. *Defendant's Exhibit H, at p 4.* Capitol then retained independent adjuster Henry Russo of RCS Associates to investigate the potential claim against Kenard. *Defendant's Exhibit H, at pp. 6-11.* Adjuster Russo sent

numerous communications to Capitol throughout its investigation. *Defendant's Exhibit H, at pp. 6-11.* In one such correspondence dated February 23, 2007, Adjuster Russo informed Capitol that Kenard had an additional insurance policy issued by PSM. *Defendant's Exhibit H, at pp. 8-9.*

On or about February 22, 2007, James Doyle, as Administrator of the Estate of Michael Doyle, filed a wrongful death action against Kenard (the "Underlying Litigation"). *Defendant's Exhibit* C. In the Underlying Litigation, Doyle alleges that Kenard "owned, operated, managed, and controlled the property and building, including the apartment, porch, and porch guarding system. *Defendant's Exhibit* C, at ¶ 1. Doyle further alleges that Kenard was negligent in its management of the property, causing Michael Doyle's fatal fall from the apartment porch on January 1, 2007. *Defendant's Exhibit C, at ¶ 8.*

Capitol's primary policy and umbrella policy afford coverage for the claims asserted against Kenard in the Underlying Litigation. Coverage exists because Capitol's intent to was to: 1) insure Kenard as a property management company, and 2) insure Kenard's property management activities, not only for its primary address ("location one") but also for every property that Kenard managed. *Ex. 1, Excerpt of Deposition of David Regele, p. 113-114.* Capitol has never declined coverage for Kenard in connection with the Underlying Litigation or issued any reservation of rights letter.

On February 26, 2007, Capitol received notice of the Underlying lawsuit. *Ex. 2, Capitol's Adjuster Notes.* Because the Underlying Claim was covered under Capitol's policies, Capitol retained Attorney Robert Martier to represent Kenard in the Underlying

Litigation on or about March 13, 2007. *Defendant's Exhibit H, at p. 17.* At that time, Attorney Martier indicated to Capitol that another attorney had entered an appearance and filed an answer on behalf of Kenard. *Defendant's Exhibit H, at p. 18.* That attorney, Bradford S. Purcell of the law firm of Purcell & Wardrope, Chtd, had been retained by PSM to answer the underlying plaintiff's complaint and defend Kenard. *Defendant's Exhibit* I.

On July 2, 2007, Geraldine Lichterman, President of Kenard, wrote a letter to Mr. Russo. *Defendant's Exhibit H, at P. 22.* The letter from Ms. Lichterman reads, in part, as follows:

> I understand that the insurance provided to Kenard Management Corporation by Capitol Insurance Company consists of a Commercial General Liability policy, Policy No.: CP00214424, policy period: November 1, 2006 to November 1, 2007. In addition, Capitol Indemnity Corporation provides an Umbrella Liability policy with a $1 million limit. It is my understanding that both of these policies are excess over any other insurance we may have. We are assuming the policy with Public Service Mutual Insurance Company is primary insurance. Brad Purcell has recently requested information regarding any other insurance which we maintain. We will provide him with additional information regarding the policies with Capitol Insurance Company. Should you desire to speak directly with Mr. Purcell, he can be reached at 312-427-3900.

*Defendant's Exhibit H, at p. 22.* Ms. Lichterman did not intend for the above letter to constitute a targeted tender of the PSM policy, nor did she intend to excuse Capitol from its defense and indemnity obligations. *Ex. 3, Lichterman Affidavit.* At all times, Kenard expected that Capitol would abide by the terms and conditions of the insurance policies and take all measures necessary to provide Kenard with the protections

afforded under the policies. *Ex. 3, Lichterman Affidavit.* Kenard never advised PSM that Kenard would look solely to PSM to provide defense and indemnity. *Ex. 4, Affidavit of J. Bannon.*

Since 2007, Capitol has received numerous demands for it to defend Kenard in the Underlying Litigation. *Ex. 2, Adjuster Notes; Ex. 4, Bannon Affidavit; Ex. 5, Correspondence to Capitol from January through April 2009; Ex. 6, Letter to Capitol dated May 11, 2009.* In November 2007, PSM demanded that Capitol contribute to the cost of the defense of Kenard. *Ex. 1, Excerpt of Depo. of David Regele, p. 93; Ex. 2, Adjuster Notes, p. 4.* In response to this demand, Capitol's adjuster, Mr. Robert Miller simply noted that he had "some hesitations regarding this as who knows what it could amount to." *Ex. 1, p. 95, Ex. 2, p. 4.* In determining whether to accept or deny the request for a defense, it was improper for Capitol to consider the anticipated costs associated with the defense because "you either owe a duty to accept or to deny." *Ex. 1, p. 96.* Between January and April, 2009, PSM, by and through counsel, repeatedly requested that Capitol acknowledge its duty to defend Kenard. *Ex. 5, Correspondence to Capitol from January through April 2009.* Similarly, on May 11, 2009, Attorney George Collins, personal counsel to Kenard, demanded that Capitol provide a defense in the Underlying Litigation. *Ex. 6, Letter to Capitol dated May 11, 2009.* To date, Capitol has refused to defend its insured or otherwise contribute to the defense of its insured. PSM has incurred more than $89,816.12 to defend Kenard in the Underlying Litigation. *Ex. 4.*

The plaintiff in the underlying litigation made a demand for $3,000,000 to settle the case in January 2009. *Ex. 7, Demand Letter*. PSM has offered its policy limit of $1,000,000. *Ex. 8, Policy Limit Offer*. Capitol has refused to offer its $2,000,000 policy limits. *Ex. 6.*

## ARGUMENT

### THE COURT MUST DENY CAPITOL'S MOTION FOR PARTIAL SUMMARY JUDGMENT BECAUSE IT HAS A DUTY TO DEFEND AND INDEMNIFY KENARD IN CONNECTION WITH THE UNDERLYING LITIGATION.

The Court must deny Capitol's Partial Motion for Summary Judgment (and allow PSM's Cross-Motion for Partial Summary Judgment) because 1) the "Targeted Tender" Rule is inapplicable; 2) even if the rule could apply in this context, there is no merit to Capitol's position because Kenard never made a known or intentional "targeted" tender to PSM, 3) the "Other Insurance" clauses are mutually repugnant and, consequently, Capitol is obligated to pay its share for the defense of Kenard in the Underlying Litigation; 4) it is indisputable that Capitol received a request for a defense no later than May 11, 2009, and under Illinois law, Capitol is liable for all pre-tender defense costs; and 5) alternatively, in circumstances where PSM has offered the maximum limits of its policy ($1,000,000), the Court should compel Capitol to provide a defense for the insured.

### A. Capitol's Reliance On the Targeted Tender Doctrine is Misplaced, and Capitol Is Therefore Not Relieved of its Co-Primary Defense and Indemnity Obligations.

The Court must deny Capitol's Motion for Partial Summary Judgment, as the "Targeted Tender" rule does not apply under the present circumstance. The rule is inapplicable because Kenard never made an actual and knowing "Targeted Tender" to

PSM, and in fact, Kenard tendered defense and indemnity to both carriers, thereby triggering each insurer's concomitant duty to defend and indemnify its insured.

Courts in Illinois have recognized a "Targeted Tender" doctrine which allows an insured to "elect which one of its insurers will defend a particular case." *John Burns Construction Co. v. Indiana Ins. Co.*, 727 N.E.2d 211, 215 (Ill. 2000); *Cincinnati Cos. V. West Am. Ins. Co.*, 701 N.E.2d 499, 503 (Ill. 1998). However, both the Illinois Appellate Court and the United States District Court for the Southern District of Illinois have expressly limited the doctrine to construction cases and allowed general contractors who are covered by two policies to tender the loss to a specific insurer (while de-selecting or de-activating their own insurer). *Shelter Gen. Ins. Co. v. Zurich Direct*, 2008 WL 4449873, at * 8 (S.D.I.L. 2008); *Pekin Ins. Co. v. Fid. & Guar. Ins. Co.*, 357 N.E.2d 10, 19 (Ill. App. Ct. 2005). In order to select one policy's coverage over another, the insured must "knowingly decide against" the other insurer's involvement, and actually instruct the insurers of that desire. *See John Burns*, 727 N.E.2d at 215, 217. In *John Burns*, for example, Burns Construction Company was afforded coverage under its own liability policy issued by Royal Insurance Company, and was also named as an additional insured under a subcontractor's liability policy issued by Indiana Insurance Company. *Id.* at 213. Following a loss which was covered under both policies, Burns sent a letter to its subcontractor indicating that it would look solely to the Indiana policy for defense and indemnity. *Id.* Burns also notified Royal, its own carrier, of the loss but expressly instructed Royal not to become involved in the suit. *Id.* The Court held that such actions constituted an actual and knowing Targeted

Tender to Indiana which excused Royal's involvement in defending and indemnifying Burns in the underlying litigation. *Id.* at 216.

It is well established that the rationale behind the "Targeted Tender" rule is to "protect the insured's right to knowingly forgo an insurer's involvement." *Cincinnati Cos. V. West Am. Ins. Co.*, 701 N.E.2d 499, 503 (Ill. 1998). Thus, "when an insured has knowingly forgone an insurer's assistance, there is no existing duty to defend, even if previously triggered by actual notice of a claim." *Id.; see also Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 719 N.E.2d 1092, 1097 (Ill. App. Ct. 1999) ("an insured may knowingly forego the insurer's assistance and relieve the insurer of its obligations to defend by instructing the insurer not to involve itself in the litigation.").

The "Targeted Tender" rule is inapplicable under the present circumstances which involve neither construction-related liability nor the tender of defense and indemnity in accordance with any additional insured provision (as Kenard is the named insured on both PSM and Capitol's policies). *Plaintiff's Stmt. Mat. Facts at ¶¶ 8, 11.* For these reasons, Capitol's reliance on the doctrine as a basis for asserting that it does not owe defense or indemnity to Kenard unless or until PSM exhausts its policy limits is misplaced.

Even if the "Targeted Tender" rule could apply under the circumstances of the present case, it would still not negate Capitol's defense and indemnity obligations to Kenard, as Kenard never made an actual and knowing tender to PSM, nor did it expressly instruct Capitol to refrain from getting involved. The sole basis for Capitol's position is the July 2, 2007 correspondence from Kenard President's Geraldine

Lichterman. Specifically, Capitol relies on Ms. Lichterman's statements that it is her "understanding that both of [the Capitol] policies are excess over any other insurance that [Kenard] has," and that she "was <u>assuming</u> that the policy with Public Service Mutual Insurance Company is primary insurance," (emphasis added), to assert that Kenard made a Targeted Tender to PSM, and intended to relieve Capitol of defense and indemnity obligations unless or until the PSM policy is exhausted. *Id.* Capitol's avowed position is factually and legally untenable. As is made clear in her own affidavit (*Ex. 3*), Ms. Lichterman never intended the July 2, 2007 letter to serve as a targeted tender, nor did she intend it as an instruction to Capitol to refrain from becoming involved unless or until PSM exhausted its policy limits. *Ex. 3, G. Lichterman Affidavit at ¶ 6.* As stated in the affidavit:

> It was not my intent (by or through the letter) to waive any rights or protections afforded to KMC in the Capitol Insurance Company policies. At all times, I expected that Capitol Insurance Company would abide by the terms and conditions of the insurance policies and take all measures necessary to provide KMC with the protections afforded under the policies (whether my assumptions regarding the layers of insurance were correct or incorrect). More particularly, it was not my intent to undertake any election, under the so-called "targeted tender" doctrine or otherwise, as a result of which either insurance company (Public Service Mutual Insurance Company or Capitol Insurance Company) would be excused from providing and/or sharing in providing (as may be required in the insurance policies) for the defense or indemnification of KMC.

*Ex. 3.* Simply put, it was not Ms. Lichterman's intention to forgo any rights afforded under the Capitol's policies or otherwise excuse Capitol from its duty to defend. Unlike the general contractors in the construction context, Ms. Lichterman had no financial

reason to de-select or de-activate the coverage Kenard had under the Capitol policies. Moreover, in comparing Ms. Lichterman's letter to the correspondence at issue in the *John Burns* case, it is clear that the July 2, 2007 letter cannot constitute a Targeted Tender under Illinois law. After all, unlike in *John Burns*, where the insured instructed one carrier to serve as sole coverage provider, while simultaneously informing the other not to get involved, Kenard never expressly informed PSM that it would look exclusively to PSM for coverage, nor did Kenard clearly and unequivocally instruct Capitol not to become involved until PSM's coverage was exhausted. *Ex. 3, Ex. 4, Affidavit of Jeffrey Bannon.* Rather, Ms. Lichterman sent a letter to Capitol alone which merely repeated certain assumptions. The vague assertion of Kenard's understandings and assumptions is certainly not decisive enough to constitute a knowing or actual targeted tender to PSM.

There is also no merit to Capitol's assertion that "Kenard never tendered the defense of the underlying litigation to Capitol." *Plaintiff's Stmt. Mat. Facts* at ¶ 29. This contention is wholly inaccurate. Under Illinois law, an insurer's duty to defend arises with "actual notice of a claim against the insured." *John Burns*, 727 N.E.2d at 215. "[W]hat is required [to trigger the duty to defend] is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Cincinnati Cos. v. West Am. Ins. Co.*, 701 N.E.2d at 503. Accordingly, contrary to the unsupported assertions of the defendant, there was no requirement for Kenard to formally "tender" the defense to Capitol. It is undisputed that the claims asserted in the Underlying Litigation are covered under Capitol's

policies. *Ex. 1, Excerpt of Deposition of David Regele, p. 113-114*. It is also undisputed that Capitol received notice of the potential underlying claim on January 11, 2007 from its agent, Heil and Heil Insurance Agency Inc., who itself had been notified by Kenard. *Plaintiff's Stmt. Mat. Facts at ¶¶ 20-21 and documents attached at Defendant's Exhibit H, at pp. 1-4*. Thus, Capitol's duty to defend was triggered on January 11, 2007, as they had actual knowledge of a claim that could potentially fall within Capitol's policy coverage. This contention is further supported by the undisputed fact that Capitol retained Attorney Robert Martier to represent Kenard in the underlying litigation, who then attempted to file an appearance on Kenard's behalf. *Plaintiff's Stmt. Mat. Facts at ¶¶ 23, 26*. It is difficult to imagine how Capitol can claim that Kenard never "tendered" defense and indemnity to Capitol, even though Capitol received notice of the loss from Kenard and then retained defense counsel Martier to appear on Kenard's behalf. Not only is such action inconsistent with the contention that Capitol never received a "tender," but it also flies directly in the face of Capitol's assertion that Kenard knowingly directed it not to become involved in the underlying litigation.

Additionally, there is no dispute that Capitol has received numerous demands or requests for it to contribute to the defense of Kenard since 2007. *Ex. 2, Adjuster Notes; Ex. 4, Bannon Affidavit; Ex. 5, Correspondence to Capitol from January through April 2009; Ex. 6, Letter to Capitol dated May 11, 2009*. As early as November 2007, PSM demanded that Capitol contribute to the cost of the defense of Kenard. *Ex. 1, Excerpt of Depo. of David Regele, p. 93; Ex. 2, Adjuster Notes, p. 4.*[2] Between January and

---

[2] In response to this demand, Capitol's adjuster, Mr. Robert Miller simply noted that he had "some hesitations regarding this as who knows what it could amount to." *Ex. 1, p. 95, Ex.*

April, 2009, PSM, by and through counsel, repeatedly requested that Capitol acknowledge its duty to defend Kenard. *Ex. 5, Correspondence to Capitol from January through April 2009.* Similarly, on May 11, 2009, Attorney George Collins, personal counsel to Kenard, demanded that Capitol provide a defense in the Underlying Litigation. *Ex. 6, Letter to Capitol dated May 11, 2009.* These repeated requests and demand demonstrate that the loss was "tendered" to Capitol.

PSM has incurred more than $89,816.12 to defend Kenard in the Underlying Litigation. *Ex. 4.* Capitol was obligated to pay for and/or contribute to these costs and yet it has ignored or failed to respond to the repeated demands for it to provide its insured with a defense.

Based upon the above, Capitol's reliance on the "Targeted Tender" doctrine as a basis for seeking partial summary judgment is misplaced. It is clear that the "Targeted Tender" rule is inapplicable under these circumstances, and that Kenard never actually made a targeted tender of PSM's policy.

### B. **Capitol's "Other Insurance" Provision Does Not Render Capitol's Coverage Excess Over Liability Coverage Provided by PSM.**

The Court must deny Capitol's Partial Motion for Summary Judgment, as Capitol's "Other Insurance" provision does not render Capitol's primary policy excess over the coverage provided by PSM. In fact, a careful review of the policy provisions at issue shows that each policy purports to serve as excess coverage over the other policy's limits. Because they are directly conflicting or mutually repugnant, PSM's and Capitol's

---

*2, p. 4.* Of course, in determining whether to accept or deny the request for a defense, it was improper for Capitol to consider the anticipated costs associated with the defense because "you either owe a duty to accept or to deny." *Ex. 1, p. 96.*

"other insurance" provisions effectively cancel each other out, and PSM and Capitol are obligated to split costs associated with defending and indemnifying Kenard on a co-primary basis.

Under Illinois law, where two policies providing primary coverage contain "other insurance" clauses which both state that the coverage provided is excess, those excess clauses cancel each other out, and the two insurers are obligated to then share the costs associated with defending and indemnifying the insured against the underlying claims. *Ohio Cas. Ins. Co. v. Oak Builders, Inc.* 373 N.E.2d 992, 996 (Ill. App. Ct. 2007); *Padilla v. Norwegian-American Hospital, Inc.*, 641 N.E.2d 572, 577 (Ill. App. Ct. 1994); *Putnam v. New Amsterdam Cas. Co.*, 269 N.E.2d 97, 102 (1970). "This approach is fair when there is no rational basis for applying the clause of one policy and refusing to apply the identical clause of another policy." *Ohio Cas. v. Oak Builders*, 373 N.E.2d at 995; *Padilla*, 641 N.E.2d at 572.

In the present matter, it appears that both PSM's and Capitol's pertinent "other insurance" provisions purport to provide excess coverage, over and above amounts provided by the other insurer's policy.  As is indicated above, PSM's Businessowners Liability Policy contains the following other insurance provision:

### C. Other Insurance.

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of insurance.

2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

3. When this insurance is excess we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*Defendant's Exhibit E, at pp. 9, 63.* Capitol's primary policy contains the following language:

### Endorsement – Real Estate Property Managed

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part

This insurance does not apply to "property damage" you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

*Defendant's Exhibit F, at p. 62.*

Interestingly, in its own Motion, Capitol simply concludes that, because of the excess provision contained within its own endorsement, "the Capitol policy is excess over the PSM policy." *See Capitol's Motion at p. 10.* Capitol makes this declaration without even comparing the above two provisions, or even referencing the PSM "other insurance" clause. In actuality, when comparing the two "other insurance" provisions above, it is reasonably apparent that both claim to provide excess coverage over any other insurance which is available to the insured. The PSM policy specifically states

that "Business Liability coverage is excess over any other insurance that insures for direct physical loss or damage. *Defendant's Exhibit E, pp. 9, 63*. Similarly, the Capitol policy states that "this insurance is excess over any other valid and collectible insurance available to you." *Defendant's Exhibit F, at p. 62*. When read side by side, one simple conclusion emerges - that these provisions are identical, and as a consequence, they are completely conflicting and repugnant. As such, they effectively cancel each other out, leaving PSM and Capitol obligated to share in the costs of defending and indemnifying Kenard in the underlying litigation as co-primary insurers. *Ohio Cas. v. Oak Builders*, 373 N.E.2d at 995; *Padilla*, 641 N.E.2d at 572.

In arguing that its own policy is excess to PSM's, Capitol relies primarily upon two cases, *Hartford Fire Ins. Co. v. Everest Indem. Ins. Co*, 861 N.E.2d 306 (Ill. App. Ct. 2006) and *Woodson v. A&M Investments*, 591 So.2d 1345 (LA App. Ct. 1991). Both of these cases are not on point, however, for the same very important reason: in both *Hartford* and *Woodson*, there was no direct conflict between the "excess" clause contained within the "Real Estate Property Managed Endorsement" and the other insurance clauses in the competing policies. In *Hartford Fire Ins. Co v. Everest Indem.*, the Hartford policy contained an endorsement which stated:

> "With respect to your liability arising out of your management of property for which you are acting as a real estate manager this insurance is excess over any other valid and collectible insurance available to you."

*Hartford Fire Ins. Co. v. Everest Indem. Ins. Co*, 861 N.E.2d at 307. By contrast, the competing Everest policy contained the following provisions:

> Insurance is primary except where b. below applies. If this
> insurance is primary, our obligations are not affected unless
> any of the other insurance is also primary.

*Hartford Fire Ins. Co. v. Everest Indem. Ins. Co*, 861 N.E.2d at 307. Similarly, in

*Woodson*, the policies at issue contained the exact same non-conflicting terms as in the

*Hartford Fire* case. *See Woodson v. A&M Investments*, 591 So.2d at 1347.

While Capitol is indeed correct in asserting the *Hartford Fire* and *Woodson* Courts

enforced the "excess clause" contained within the same Real Estate Property Managed

Endorsement as that in Capitol's policy, Capitol fails to address the fact that the

competing policies in those cases both clearly stated that they were primary policies.

Thus, no conflict existed between the applicable "other insurance" clauses at issue in

those cases, and the courts ordering of coverage conformed perfectly with the clear

and unambiguous language of the policies. As discussed above, this is clearly not the

case in the present dispute, as both policies applicable "other insurance" clauses each

attempt to position their coverage as being excess over the other.

In contrast, *Peerless Ins. v. Vermont Mut. Ins. Co.* is more precisely in line with

the policy language at issue in this matter. *Peerless Ins. v. Vermont Mut. Ins. Co.*, 849

A.2d 100 (N.H. 2004) (*attached hereto as Exhibit 9*). In *Peerless*, Peerless Insurance

issued a general liability policy to Red Oak Property Management Inc. which contained

an endorsement stating that:

> With respect to your liability arising out of your management
> of property for which you are acting as real estate manager,
> this insurance is excess over any valid and collectible
> insurance available to you.

*Id.* at 102 (*Ex. 9*). Vermont Mutual also issued a policy which provided general liability coverage to Red Oak, and contained the following provision:

> If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect it or not. . .

*Id.* at 102 (*Ex. 9*). In examining the two provisions, the New Hampshire court stated the following: "as we assign the same priority to the excess insurance provisions of Peerless' and Vermont Mutual's insurance policies, we conclude that the excess provisions are mutually repugnant, and order each insurer to pay its pro rata share." *Id.* at 103.

As is clear, the *Peerless* Court deemed the competing "other insurance" provisions – which are nearly identical to those contained in the PSM and Capitol policies – as mutually repugnant excess provisions that cancel each other out and effectively render each insurer as a co-primary provider. The *Peerless* case is instructive given the factual similarities. Thus, Capitol is not entitled to summary judgment on these issues, as it has failed to demonstrate sufficient facts or evidence which would clearly indicate that Capitol's coverage is excess over PSM's.

In its Motion, Capitol also asserts that the parties clearly intended Capitol's policy to be excess over PSM's. Specifically, Capitol asserts that the Real Estate Property Management Endorsement "makes the Capitol policy primarily responsible for Kenard's ordinary business activities but not for its property management liability." *See Capitol's Motion at p. 14.* Capitol then goes on to list a number of alleged facts pertaining to Kenard's, PSM's, and Capitol's "knowledge," and asserts that they support the

conclusion that Capitol's policy provides excess coverage.[3] *Id.* As an initial matter,

PSM queries as to what "ordinary business activities" the Capitol policy is intended to

cover which fall outside of Kenard's "property management liability" given that Kenard

is engaged in the business of property management and is described as "a property

management corporation" in the statement of facts. *Plaintiff's Stmt. Mat. Facts at ¶ 3.*

Regardless, Capitol's contention that its interpretation effectuates the true intent of the

parties is severely undercut by the fact that, upon receiving notice of the loss, Capitol

conducted an investigation and retained defense counsel on Kenard's behalf who then

attempted to file an appearance in the underlying matter in or around early March,

2007. *Plaintiff's Stmt. Mat. Facts at ¶¶ 22-24.* At that time, Capitol was aware of the

existence of the PSM policy, as independent adjuster Henry Russo informed Capitol of

such in a letter dated January 1, 2007. *See Defendant's Exhibit H, at p. 9.* Even

though Capitol claims that it never intended to provide primary coverage to Kenard,

Capitol nonetheless acted like a primary insurer in retaining defense counsel and

---

[3]     Specifically, at Page 14 of its Motion, Capitol asserts the following statements in supposed support of its contention that the Capitol Policy is excess over the PSM policy:

1. Kenard knew that the PSM policy covered it for any property management liability;
2. Kenard knew that the PSM policy listed the properties that Kenard managed, while the Capitol policy did not;
3. Both Kenard and Capitol knew that the Capitol policy listed Kenard's office address as the only insured location;
4. Kenard knew that the PSM premium was five times larger than the Capitol premium;
5. Capitol know that its premium was much lower than it would have been if it Capitol and Kenard intended Capitol to provide primary insurance covering Kenard's property management liability.

Interestingly, Capitol does not cite the Material Statement of Facts or supporting exhibits in making these blanket assertions regarding Kenard's knowledge.

directing it to appear on behalf of Kenard. What is more, it did so knowing full well that Kenard also had a policy with PSM. It was only after Capitol learned that Bradford Purcell had answered Mr. Doyle's Complaint, and PSM instituted this declaratory judgment action that Capitol started claiming that it intended to issue an excess liability policy to Kenard. Thus, Capitol's actions and not its words point to the inescapable conclusion that it originally recognized its duty to defend and indemnify Kenard at the primary level, but upon learning of PSM's involvement, attempted to change its tune and duck its obligations to its insured.

For the above reasons, the court must deny Capitol's Motion for Partial Summary Judgment, as the PSM and Capitol "other insurance" provisions effectively cancel each other out, leaving each to share in the defense and indemnity costs at primary level, and the intent of the parties, as evidenced by their actions, does not indicate that Capitol's coverage is excess to that of PSM's.

C. **Because Kenard Tendered The Claim To Capitol, Capitol Is Obligated to Afford Coverage for All of Kenard's Pre-Tender Defense Costs**.

Capitol is obligated to pay its share of all "pre-tender" costs associated with defending Kenard in the Underlying Litigation, as Kenard undoubtedly tendered the claim to Capitol (by no later than May 11, 2009), and the "voluntary payments" provision contained within the Capitol policy is inapplicable because Capitol has not suffered prejudice from the payment of the defense costs. While Illinois courts do allow an insurer to avoid paying pre-tender defense costs under the "voluntary

payments" provision,[4] the insurer must demonstrate that the pre-tender costs caused it to suffer prejudice. *Westchester Fire Ins. Co. v. G. Heilman Brewing Co., Inc.*, 747 N.E.2d 955, 968 (Ill. App. Ct. 2001); *Pittway Corp. v. American Motorists Ins. Co.*, 370 N.E.2d 1271, 1277 (Ill. App. Ct. 1977). Unless the insurer can make such a demonstration, then it is obligated to provide coverage for all pre-tender defense related costs. *Id.*

In the instant case, Kenard's original notice to Capitol on January 11, 2007 constituted a tender which triggered Capitol's duty to defend and indemnify Kenard in the Underlying Litigation. However, even assuming for the sake of argument that the original notice did not constitute a tender, Kenard nonetheless undoubtedly tendered defense and indemnity to Capitol, when Kenard's counsel, George B. Collins, sent a letter dated May 11, 2009, which indicated that Capitol "has a fiduciary duty to its policyholder to defend the case and not to put its own interest ahead of that of the policyholder." *Ex. 6.*[5] Upon receiving Kenard's tender, Capitol became obligated to contribute to all costs, both pre- and post tender, associated with defending Kenard in the underlying claim. Hence, Capitol cannot now disclaim coverage for defense costs expended thus far, or otherwise assert that it has no duty to defend and indemnify Kenard against the Doyle claims.

---

[4]    Capitol's policy contains the following "Voluntary Payments" provision: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent."

[5]    As outlined above, Capitol has received numerous demands or requests for it to contribute to the defense of Kenard since 2007. *Ex. 2, Adjuster Notes; Ex. 4, Bannon Affidavit; Ex. 5, Correspondence to Capitol from January through April 2009; Ex. 6, Letter to Capitol dated May 11, 2009.*

In accordance with the "pre-tender" rule, Capitol is obligated to reimburse PSM for its share of the $89,816.12 that has been incurred to defend Kenard in the Underlying Litigation. *Ex. 4, Bannon Affidavit.*

**D.** **In the alternative, Capitol should be solely responsible to defend Kenard because PSM has offered its $1,000,000 policy limits and Capitol has refused to offer its $2,000,000 policy limits.**

In the alternative, the Court should determine and declare that Capitol is solely responsible for the defense of Kenard because, in response to a $3,000,000 demand in the Underlying Litigation, PSM has offered the maximum limits of its policy ($1,000,000) and Capitol has refused to offer its policy limits (a total of $2,000,000). *Ex. 8, Policy Limit Offer.* It is fundamentally unfair to compel PSM to continue to fund the defense in circumstances where it has offered its policy limits and Capitol has refused to do so. PSM should not be forced to fund the defense on behalf of Capitol. It is noteworthy that PSM's policy expressly provides that:

> Our right and duty to defend end when we have used up the applicable limits of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

*Defendant's Exhibit E, at pp. 9, 63.* PSM has offered the limits of its insurance to fund a settlement with the plaintiff in the Underlying Litigation. Under the circumstances, PSM should be entitled to terminate its duty to defend. *See generally American Standard Insurance Company v. Basbagill*, 775 N.E.2d 255 (Ill. App. Ct. 2002).

## CONCLUSION

For the reasons stated above, PSM respectfully requests that the Court deny Capitol's Motion for Partial Summary Judgment and allow PSM's Cross- Motion for Partial Summary Judgment on Count I and Capitol's Counterclaim.  More specifically, this Court should enter judgment in favor of PSM and against Capitol and declare that:

1. Capitol's policies, including, the Commercial General Liability Policy and the Umbrella Policy, provide coverage for the claims asserted against Kenard in the Underlying Litigation;

2. Capitol is obligated under its Commercial General Liability Policy to defend and indemnify Kenard in connection with the claims asserted in the Underlying Litigation;

3. Capitol's Commercial General Liability Policy is co-primary insurance for the claims asserted against Kenard, and Capitol has a primary obligation to defend and indemnify Kenard;

4. Capitol must reimburse PSM for the fees and costs it has incurred in connection with the defense of Kenard in the Underlying Litigation;

5. Capitol must contribute 50% to the fees and costs incurred to defend Kenard in the Underlying Litigation;

6. Alternatively, Capitol is solely responsible for the future costs and fees incurred to defend Kenard in the Underlying Litigation and PSM shall have no further obligation to contribute to the defense.


Plaintiff,

Public Service Mutual Insurance Company

By:


/s/ John A. Donovan III
One of its attorneys

Dated: 5/26/2010

Howard J. Fishman (Illinois Bar No. 6216066)
Aronberg Goldgehn Davis & Garmisa
330 North Wabash, Suite 1700
Chicago, Illinois 60611
(312) 828-9600
(312) 828-9635 (Fax)

*Admitted Pro Hac Vice*
John A. Donovan III
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108
617-523-6010

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May 2010, that PLAINTIFFS' RESPONSE TO DEFENDANT CAPITOL TRANSAMERICA CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT was electronically filed with the Court using the ECF system.

*/s/ John A. Donovan III*_____
John A. Donovan III

S:\MAGNA CARTA v. KENARD MANAGEMENT - AM-970-2669\Opp to Capitol SJM\Opposition to Capitol SJM.DOC