**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PUBLIC SERVICE MUTUAL INSURANCE | ) | |
| COMPANY, Individually and as Subrogee of | ) | |
| KENARD MANAGEMENT CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 09 CV 2829 |
| | ) | |
| CAPITOL TRANSAMERICA CORPORATION, | ) | |
| d/b/a CAPITOL INDEMNITY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT AND REPLY
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Defendant, Capitol Transamerica Corporation d/b/a Capitol Indemnity Corporation

("Capitol"), by its attorneys, SWANSON, MARTIN & BELL, LLP, responds to the cross-

motion for summary judgment filed by Public Service Mutual Insurance Company ("PSM"), and

replies in support of its motion for partial summary judgment. Capitol is entitled to partial

summary judgment in its favor and PSM's cross motion for summary judgment should be denied

because:

1)  Capitol's coverage is excess over PSM's coverage in this case;

2)  The selective tender  rule applies to this case and Kenard made a selective tender

    when it advised Capitol not to participate in the defense of the underlying suit:

3)  The excess insurance clause in Capitol's Real Estate Property Managed

    Endorsement makes Capitol's coverage excess over PSM's coverage;

4)      Capitol is not obligated under Illinois law to pay pre-tender defenses costs to either Kenard or PSM; and

5)      PSM does not have the right under Illinois law to tender its policy limits and withdraw its defense.

## ARGUMENT

**A.   The *John Burns* selective tender rule applies to this case; Geraldine Lichterman's letter constitutes a notice to Capitol of a selective tender to PSM; Kenard's failure to cooperate with Capitol's initial efforts to defend Kenard supports the conclusion that Kenard did not want Capitol's defense.**

The selective tender rule, also called the targeted tender rule, is not limited to construction cases, as the defendant argues.  In *Chicago Hospital Risk Pooling Program* [CHRPP] *v. Illinois State Medical Inter-Insurance Exchange* [ISMIE]*, 325 Ill. App. 3d 970 (1st Dist. 2001), the Illinois Appellate Court for the First Judicial District found that a doctor could utilize the rule to select which of his two insurance carriers should defend him. *Chicago Hospital,* 325 Ill. App. 3d at 979-980.

In the CHRPP case, Luz Rivera filed a medical malpractice action against Norwegian-American Hospital and Dr. Carlos Baldoceda, alleging that the defendants were negligent in delivering her twin boys.  *Chicago Hospital,* 325 Ill. App. 3d at 973.  Dr. Baldoceda was insured under a professional liability policy issued by ISMIE.  *Chicago Hospital,* 325 Ill. App. 3d at 973. He was also covered under CHRPP as an employed physician of the hospital.  *Chicago Hospital,* 325 Ill. App. 3d at 973. CHRPP administered a trust under the Religious and Charitable Risk Pooling Trust Act whereby participating nonprofit hospitals pool certain risks and CHRPP functioned as an insurance company as to its participating hospitals.  *Chicago Hospital,* 325 Ill. App. 3d at 973, 978-979.

2

ISMIE agreed to defend Dr. Baldoceda, but Dr. Baldoceda tendered the defense of the medical malpractice litigation to CHRPP, which CHRPP declined. *Chicago Hospital,* 325 Ill. App. 3d at 973-974. Even though it refused to defend Dr. Baldoceda, CHRPP settled the Rivera action for $3 million. *Chicago Hospital,* 325 Ill. App. 3d at 974. The settlement agreement reflected that CHRPP paid $1 million on behalf of Dr. Baldoceda. *Chicago Hospital,* 325 Ill. App. 3d at 974.

CHRPP then filed an action against ISMIE to recover half of the settlement costs from ISMIE under theories of equitable contribution, unjust enrichment, and *quantum meruit*. *Chicago Hospital,* 325 Ill. App. 3d at 974. ISMIE filed an affirmative defense, alleging that the selective tender rule as expressed in *Institute of London Underwriters v. Hartford Fire Insurance Co.,* 234 Ill. App. 3d 70 (1st Dist. 1992), defeated the equitable contribution claim. CHRPP argued that the selective tender rule did not apply because the rule only applies to traditional insurance companies and CHRPP is not an insurance company but a trust. *Chicago Hospital,* 325 Ill. App. 3d at 975.

Analyzing the selective tender rule, the CHRPP court noted that "under the 'selective tender' rule, an insured has the paramount right to choose or knowingly forgo an insurer's participation in a claim," *Chicago Hospital,* 325 Ill. App. 3d at 976, citing *John Burns Construction Co. v. Indiana Insurance Co.,* 189 Ill. 2d 570 (2000). The CHRPP court said that, under the rule, "an insured has the exclusive right to determine whether to trigger coverage under an available policy," and that an insured is allowed to make a "selective tender" of its claims "irrespective of the presence of an 'other insurance' clause. The targeted insurer has the sole responsibility to defend and indemnity the insured, thereby foreclosing a claim for equitable contribution from the excluded insurer." *Chicago Hospital,* 325 Ill. App. 3d at 976, citing *John*

*Burns,* 189 Ill. 2d at 578. The CHRPP court further explained that "an insurer does not have the

right to trigger the insured's coverage under another policy in contravention of his wishes.

Otherwise, the policy becomes, in effect, a third-party beneficiary contract entered into by the

insured for the direct benefit of other insurers." *Chicago Hospital,* 325 Ill. App. 3d at 976, citing

*Bituminous Casualty Corp. v. Royal Insurance Co. of America,* 301 Ill. App. 3d 720, 726 (3rd

Dist. 1998) and other cases.

The CHRPP court applied the selective tender rule to CHRPP, even though it is not a

traditional insurance company, ruling that "where CHRPP has a concurrent obligation to cover

the risks of Dr. Baldoceda, he has the 'paramount' right to exclusively select his CHRPP

coverage to the exclusion of his ISMIE coverage." *Chicago Hospital,* 325 Ill. App. 3d at 979.

As the CHRPP court observed, by so holding, the court only required CHRPP to do "what it

contracted for, provide indemnification for Dr. Baldoceda's individual liability arising out of his

employment at the hospital." *Chicago Hospital,* 325 Ill. App. 3d at 980. Responding to CHRPP's

argument that applying the selective tender rule in this case contravenes public policy, the

CHRPP court noted that the Second District rejected the same argument in *Richard Marker*

*Associates v. Pekin Insurance Co.,* 318 Ill. App. 3d 1137 (2d Dist. 2001).

The facts of the present case parallel those in the CHRPP case. Kenard is insured by both

Capitol and PSM. As the CHRPP court noted, the selective tender rule "presumes that both

insurers have a concurrent coverage obligation." *Chicago Hospital,* 325 Ill. App. 3d at 980,

citing *Burns,* 189 Ill. 2d at 574-578. Kenard advised Capitol on July 2, 2007, through its

president, Geraldine Lichterman, that Kenard did not want Capitol's defense. Ms. Lichterman

stated that she assumed the PSM policy was providing primary insurance. (Exhibit H to

Defendant's Statement of Material Facts, page 22.) Moreover, Kenard never responded to

Capitol's initial, repeated efforts to defend the case beginning in January 2007. Another attorney, retained by PSM, actively represented Kenard from shortly after suit was filed and that defense continues. Thus, Kenard's selective tender to PSM rather than Capitol was clear and effective.

It is inaccurate to assert, as PSM does, that the selective tender rule applies only to construction cases. The CHRPP case, which was a medical negligence case, illustrates that point. The cases upon which PSM relies do not hold to the contrary and they are distinguishable on their facts. *Pekin Insurance Company v. Fidelity & Guaranty Insurance Company,* 357 Ill. App. 3d 891 (4th Dist. 2005), does not limit the effect of *John Burns* to construction cases. *Pekin* arose when a towing company tendered its defense to the liability insurance carrier for the towed delivery van. The *Pekin* court held that a selective tender under those circumstances is contrary to public policy because Illinois law requires towing companies to carry liability insurance. *Pekin,* 357 Ill. App. 3d at 901-902. *Shelter General Insurance Company v. Zurich General,* 2008 WL 4449873 (S.D. Ill. 2008) (which is not a published opinion and should not be cited, and which, as a Federal Court decision, does not control Illinois law), merely follows the *Pekin* decision declining to apply the selective tender rule in a automobile insurance case.

Moreover, both *Pekin* and *Shelter* turn, in part, upon the fact that there was no contract in those cases that required one party to obtain insurance for the other party. *Shelter,* 2008 WL at *8; *Pekin,* 357 Ill. App. 3d at 902-903. In the present case such a contract does exist. On June 1, 2006, Belmont Clark Partners, as "Owner," and Kenard, as "Manager" entered a Management Agreement. (Exhibit D to Capitol's statement of material facts.) Contrary to PSM's assertion, Kenard did not purchase both the Capitol and the PSM policies. The Management Agreement required Belmont Clark Partners, as Owner, to purchase liability insurance "to protect the interest of the parties hereto, which policies shall be so written as to protect Manager in the same

manner and to the same extent they protect Owner, and will name Owner and Manager as co-insureds." (Exhibit D, Management Agreement, Paragraph 10.) The PSM policy fulfills this contractual requirement. Thus, *Pekin* and *Shelter* are distinguishable on their facts because (1) this case does not involve public policy or statutorily required insurance and (2) the parties here do have a contractual relationship requiring one party to obtain insurance for the other.

Geraldine Lichterman's affidavit does not affect this analysis. Capitol did not have her affidavit when it acknowledged her selective tender and ceased defending Kenard. Capitol first saw the affidavit, which is dated May 25, 2010, when PSM filed its response to the pending partial motion for summary judgment. The July 2, 2007 letter was clear. Kenard's lack of cooperation with Capitol's defense efforts was clear. Whatever Ms. Lichterman's private intentions may have been, she did not communicate them to Capitol.

PSM argues, without support, that Ms. Lichterman (or presumably Kenard) had no financial incentive to target PSM over Capitol. PSM does not cite any case that requires the insured to have any incentive or reason to select one insurance carrier over another. Although such reasons may be divined from the facts of certain cases, the insured may select one carrier over another for any reason or no reason. Here, though, Kenard may have preferred PSM to defend it because Belmont Clark Partners purchased the PSM policy while Kenard purchased the Capitol policy. Certainly the Capitol premiums are substantially lower than the PSM premiums and one could speculate that Kenard did not want the Capitol premiums to increase.

PSM asserts that the statement that "Kenard never tendered the defense of the underlying litigation to Capitol," is "wholly inaccurate." (PSM brief at page 15.) PSM does not cite, however, a single instance that Kenard, itself, tendered the defense. Capitol does not dispute that

it had cooperation in the defense. It retained an investigator and defense counsel. But, Kenard did not ask Capitol to defend it.

PSM argues that PSM's demands to contribute to the defense constitute Kenard's tender of defense. It is well-settled in Illinois, however, that an insurance carrier cannot tender the defense of an insured to another carrier. "[A]n insurer does not have the right to trigger the insured's coverage under another policy in contravention of his wishes. Otherwise, the policy becomes, in effect, a third-party beneficiary contract entered into by the insured for the direct benefit of other insurers." *Chicago Hospital,* 325 Ill. App. 3d at 976, citing *Bituminous Casualty Corp. v. Royal Insurance Co. of America,* 301 Ill. App. 3d 720, 726 (3rd Dist. 1998), and other cases. Attorney Collins' letter dated May 11, 2008, is not a demand for Capitol to defend Kenard. It is a demand for Capitol to participate in the settlement by paying the full amount of Capitol's primary and umbrella policy, not a demand to pay defense costs or for Capitol to take over control of the defense. In fact, Collins states that Kenard is quite satisfied with the counsel PSM retained for Kenard.

In summary, Ms. Lichterman's letter informed Capitol that Kenard did not want Capitol's participation in the defense, thus selectively tendering to PSM and not to Capitol. Kenard's conduct confirmed that statement. The facts of this case fall squarely within the selective tender cases. Kenard's selective tender was effective to remove Capitol's obligation to defend Kenard. Capitol is entitled to partial summary judgment on this issue.

**B. Capitol's Real Estate Management endorsement excess insurance clause makes the Capitol policy excess over the PSM policy.**

PSM's argument assumes that there are only two Other Insurance or excess insurance clauses to consider – one in the PSM policy and one in the Capitol policy. In fact, the Capitol

policy contains two such clauses. One clause is found in the main body of the policy in Section

IV, Paragraph 4. It states:

    1.      Other Insurance

          If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

    a.     Primary insurance

          This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

    b.     Excess insurance

          This insurance is excess over:

                                  \* \* \*

          (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

          When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

          When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

          (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

          (2) The total of all deductible and self–insured amounts under all that other insurance.

          We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(Defendant's Exhibit F, p. 51.)

If the Capitol policy contained only the Other Insurance clause found in the body of the policy, PSM's argument that the two policy's Other Insurance clauses are mutually repugnant and cancel each other out might carry some weight.  But, the Real Estate Property Management endorsement to the policy Capitol issued to Kenard modifies the Other Insurance clause in the body of the policy.  It reads as follows:

> Endorsement – Real Estate Property Managed
>
> This endorsement modifies insurance provided under the following:
>
> Commercial General Liability Coverage Part
>
> This insurance does not apply to "property damage" to property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.
>
> With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

(Exhibit F, Page 62.)

The endorsement's excess insurance clause modifies the insurance provided in the body of the policy.  It applies specifically to the insured's liability arising out of the insured's management of  property for which it acts as real estate manager.  It states that under those circumstances the Capitol insurance is excess over other valid and collectible insurance available to the insured.

Here, Kenard acted as real estate manager of the property at 3180 North Clark Street where the accident occurred.  Kenard's liability for the accident flows directly from its management of the property. Therefore, applying the endorsement's excess insurance clause, the Capitol insurance is excess over any other valid and collectible insurance, such as the PSM policy.

PSM observes that Capitol did not consider PSM's Other Insurance clause. Of course, that is not accurate. Capitol quoted the PSM Other Insurance clause in its statement of material facts. (Statement of material facts, page 4.) On the other hand, PSM did not consider the Other Insurance clause in the body of the Capitol policy. PSM simply disregards it. Even if the two Other Insurance clauses in the body of each policy cancel each other out, the excess insurance clause in Capitol's Property Management Endorsement remains standing unopposed. PSM fails to address this fact.

This failure also pervades PSM's attempt to distinguish the cases Capitol. PSM argues that the cases are distinguishable because there was no direct conflict between the clauses considered in those cases. PSM's attempt succeeds, if at all, only if by disregarding the Other Insurance clause contained in the body of Capitol's policy. But it is well-settled that one must consider the entire policy when interpreting its meaning. "When construing the language of an insurance policy, a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy …. An insurance policy must be construed as a whole, giving effect to every provision." *Country Mutual Insurance Co. v. Livorsi Marine, Inc.,* 222 Ill.2d 303, 311 (2006). PSM's interpretation, which considers only the excess insurance clause in the endorsement and disregards the Other Insurance clause in the body of Capitol's policy, fails to give both clauses effect. PSM's interpretation impermissibly makes the Other Insurance clause in the body of the policy redundant.

It is not difficult to construe the two clauses together, giving each effect. The clause in the main body of the policy applies to Kenard's general business activities. PSM discounts this possibility, asserting that Kenard's only business is managing property. But, in the process of managing property, Kenard maintains an office and carries on ordinary business activities such

as employing staff, using office equipment, and allowing customers and other visitors into its

office space.  These ordinary business activities expose Kenard to ordinary business liability.

Even if Kenard exercises appropriate care, a staff member or visitor to the office may trip or fall,

leading to an injury claim against Kenard.  In this instance, the Other Insurance clause in the

body of Capitol's policy would apply.

On the other hand, Kenard is also exposed to liability flowing from property it manages.

In the present case, for example, someone was injured at property Kenard managed.  Kenard has

less control over activities that occur at properties it manages than it does over activities in its

own office space, thus exposing it to greater liability from its managed property.  It is reasonable

for an insurance carrier to recognize this special and increased risk by limiting its exposure, by

increasing its premiums, or by some combination of those steps.  Here, Capitol limited its

exposure to Kenard's increased risk as a property manager by adding the endorsement that

makes Capitol's coverage for such liability excess over any other insurance available to Kenard.

Because the endorsement limited Capitol's exposure to risks associated with Kenard's property

management activities, Capitol charged a much lower premium than it likely would have charged

for coverage that included property management liability exposure. PSM's policy, purchased

pursuant to the Management Agreement between Kenard and The Belmont Clark Partners

specifically to cover Kenard's property management liability exposure, carried a much higher

premium than Capitol's.

This interpretation gives effect to both clauses. It does not disregard either one of them.

PSM's interpretation incorrectly disregards one of them.  Therefore, PSM's interpretation is

incorrect and carries no weight.

*Hartford Fire Insurance Co. v. Everest Indemnity Insurance Co.,* 369 Ill. App. 3d 757 (1st Dist. 2006), is directly on point. It enforced an excess insurance clause in a property management endorsement with the same language as Capitol's endorsement. So did the court in *Woodson v. A & M Investment, Inc.,* 591 S.2d 1345 (1991). *Hartford, Woodson,* the present case, and the case of *Peerless Insurance v. Vermont Mutual Insurance,* 151 N.H. 71, 849 A.2d 100 (2004), relied upon by PSM, consider identical language:

> With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

Capitol Property Management Endorsement (Exhibit F, Page 62); *Hartford,* 369 Ill. App. 3d at 758; *Woodson,* 591 S.2d at 1347; *Peerless,* 849 A.2d at 72.

*Hartford,* a recent Illinois decision, states Illinois law and must control in this case.

PSM attempts to distinguish *Hartford* and *Woodson* merely by stating that the Other Insurance clauses in those cases do not conflict and that the competing policies were primary policies. The attempt is unclear and it fails. The issue of competing Other Insurance clauses only arises when both policies are otherwise primary, so that is not a distinguishing feature among the cases. The Hartford policy (issued to the property manager in *Hartford*), contained both an Other Insurance Clause in the body of the policy and an excess insurance clause in the managed property endorsement just as the Capitol policy here. *Hartford,* 369 Ill. App. 3d at 758. As in the present case, the policy issued to the *Hartford* owner also contained an Other Insurance Clause. *Hartford,* 369 Ill. App. 3d at 758. The *Hartford* court enforced the excess insurance endorsement and held that the policy issued to the manager was excess over the policy issued to the owner, stating,

"[T]he intent to provide only excess insurance under the present circumstances is clearly expressed by the endorsement contained in the South Carolina policy." *Woodson,* 591 S.2d at

1348. The same reasoning applies in the present case, where the intent is also clearly expressed in the endorsement in the Capitol policy.

PSM asserts that *Peerless* is distinguishable from *Hartford* and *Woodson,* but fails to provide any reasoned distinction. For reasons not explored in the opinion, the *Peerless* court did not consider the Other Insurance clauses contained in the bodies of both policies. Rather, it compared the Other Insurance clause in the policy issued to the property owner (by Vermont) with the endorsement in the policy issued to the property manager (by Peerless). It is unlikely that the Peerless policy lacked a typical Other Insurance clause in the body of the policy. If it did, then the excess insurance clause in the endorsement in the Peerless policy and the Other Insurance clause in the Vermont policy could potentially be considered mutually repugnant. Otherwise, the *Peerless* court erred in failing to interpret the Peerless policy as a whole. Moreover, the *Peerless* court erred when it attempted to distinguish the two clauses by using reasoning applicable to distinguishing between a primary policy and a true excess policy when both policies before it were primary polices. For those reasons, *Peerless* is distinguishable and does not assist in the analysis of the present case.

Examining the Capitol policy as a whole demonstrates that the endorsement furthered the parties' intent. The facts supporting the parties' intent, which PSM questions, are apparent from the respective Capitol and PSM policy language as well as Ms. Lichterman's July 2, 2007 letter. Capitol's initial responses to learning about the accident - including contacting Kenard, beginning an investigation, and retaining defense counsel - do not contradict its position that the parties intended the Capitol policy to be excess over other available insurance. PSM claims that Capitol knew that "Kenard also had a policy with PSM" (PSM brief at page 24), but fails to cite any evidence of that claimed fact. There is no evidence that Capitol knew about the PSM policy

13

until Ms. Lichterman told Capitol that it existed in her July 2, 2007 letter. Capitol's initial response to notice of the accident was consistent with its duty to defend unless other insurance existed. When Capitol learned that PSM covered Kenard's liability exposure due to the accident, that PSM was defending Kenard, that Kenard considered the PSM policy to be primary, and that Kenard did not want Capitol to defend it, Capitol appropriately ceased its efforts to defend Kenard.

In summary, the excess insurance clause in Capitol's managed property endorsement makes the Capitol policy excess over the PSM policy. PSM's contrary interpretation disregards the Other Insurance clause in the main body of the Capitol policy, the parties' intent, and Illinois law. Therefore, Capitol is entitled to partial summary judgment.

**C. Kenard did not tender the claim to Capitol, but even if it did, Capitol would not be obligated to pay any of Kenard's pre-tender defense costs because PSM is at least equally responsible to defend Kenard.**

On January 11, 2007, Kenard notified its insurance agent of the accident and the agent notified Capitol. It appears that Kenard also got notice to PSM at approximately the same time and likely in a similar way. Certainly Capitol knew of the accident in January 11, 2007, and it acted on the knowledge it had at that time. Collins' letter dated May 11, 2009, as discussed previously, is not a tender of defense but a demand that Capitol offer its entire coverage of $1 million primary and $1 million excess in settlement of the claim. Collins' statement that Capitol should "defend the case" is not a tender of defense, since Collins states, "[w]e are not discontent with the quality of the defense being provided by Public Service. Public Service employed excellent attorneys. The opponent is the Corboy law firm; they are probably the most difficult plaintiff firm in Chicago. We trust that you will not provide counsel of less standing than the

attorneys now provided." Taken in context, this letter is not a request for Capitol to assume the defense but to tender its coverage.

PSM argues that, because Capitol disregarded Kenard's "tender," Capitol is liable for pre-tender defense costs. PSM fails to state to whom Capitol allegedly owes these pre-tender defense costs. There is no evidence that Kenard incurred any defense costs, pre-tender or other wise. The only evidence concerning any defense costs is Jeffrey Bannon's affidavit (PSM Exhibit 4) stating that "PSM has incurred more than $89,816.12 in Attorney's fees related to the defense of Kenard Management Corporation in the underlying litigation." (Bannon affidavit, paragraph 3.) Perhaps PSM has incurred defense costs, but there is no evidence the Kenard has incurred any.

Neither *Westchester Fire Insurance v. G. Heileman Brewing Company, Inc.,* 321 Ill. App. 3d 622 (1st Dist. 2001), nor *Pittway Corporation v. American Motorists Insurance Co.,* 56 Ill. App. 3d 338 (2d Dist. 1997), upon which PSM relies, assist PSM on this point. In both cases the insured expended its own funds to defend the litigation before notifying the insurance company. The plaintiff in *Pittway* also paid a settlement before notifying the insurance company. Neither case stands for the proposition that the insured may recover pre-tender defenses costs that another insurance company paid, or that one primary insurance company may recover pre-tender defense costs from another primary insurance company, especially where, as here, the insurance company claiming pre-tender defense costs has a independent primary duty to defend its insured.

**D. PSM may not tender its policy limits, withdraw its defense, and obligate Capitol to assume Kenard's defense.**

It is well-settled in Illinois that "an insurer's duty to defend and its duty to indemnify are separate and distinct and that the former duty is broader than the latter." *Conway v. Country*

15

*Casualty Insurance Company,* 92 Ill. 2d 388, 394 (1982). "Since the insurer's duty to defend its insured is not dependent upon a duty to indemnify, but arises from the undertaking to defend stated in the policy, an insurer's payment to its policy limits, without more, does not excuse it from its duty to defend."*Conway,* 92 Ill. 2d at 395. In *Conway,* Country Casualty, the automobile insurance carrier, paid its policy limit of $10,000 to the plaintiff but did not receive a release on behalf of Mr. Conway, it's insured. *Conway,* 92 Ill. 2d at 391. The suit continued against Conway, and when County Casualty refused to defend, Conway retained his own counsel, who settled the suit for an additional $10,000. *Conway,* 92 Ill. 2d at 392.

When Conway sought reimbursement from Country Casualty for his defense and settlement costs, Country Casualty refused to pay, claiming that, under the policy, "the Company shall not be obligated to pay any claim or to defend any suit or prosecute or maintain any appeal after the applicable limits of the Company's liability have been exhausted by payment of any judgments or settlements." *Conway,* 92 Ill. 2d at. 393. In a case of first impression, after analyzing comparable law in other states, the Illinois Supreme Court held that the insurer continued to owe a duty to defend its insured even after paying its policy limits. *Conway,* 92 Ill. 2d at 394-395; *Accord, American Service Insurance Company v. China Ocean Shipping Company,* __Ill.App.3d __, 2010 WL 2487945, *10-12 (1st Dist. 2010)(funds deposited in court by interpleader).

*Conway* controls this case. PSM claims that it has offered it policy limits to the plaintiff in the underlying suit, in return for a full release of all claims, supported by a letter dated April 15, 2010, and an unsigned release. PSM cannot escape its duty to defend Kenard by simply tendering its policy limits. PSM makes the same argument here that Country Mutual made in

*Conway,* relying upon a similar clause in its policy, except that here PSM has not paid its policy limits but only offered to do so.

PSM refers to *American Standard Insurance Company v. Basbagill,* 333 Ill. App. 3d 11 (2d Dist 2002) apparently in support of its position, although *American Standard* follows Illinois law and holds that an insurer has not "paid" its policy limits, so as to extinguish its duty to defend, by depositing it policy limits with the circuit court by interpleader. *American Standard,* 333 Ill. App. 3d at 16. The insurance carrier in *American Standard* also made the same arguments PSM makes here, again in reliance upon a similar clause in the insurance policy providing that it was not obligated to defend a suit when its policy limit was "offered or paid." *American Standard,* 333 Ill. App. 3d at 15. The argument failed. PSM's argument fails for the same reason. PSM continues to owe Kenard a duty to defend.

PSM claims that it is "fundamentally unfair to compel PSM to continue to fund the defense" when it has offered its policy limits and Capitol will not offer its policy limits. But, that is simply part of PSM's contractual obligations to Kenard. Whether Capitol evaluates the case as PSM does, and tenders its policy limits, or whether Capitol evaluates the case differently, and declines to tender its policy limits does not control whether the case settles, as PSM claims. That is a red herring. If PSM were the only insurance company involved, and the plaintiff declined to settle the case for PSM's policy limits (perhaps preferring to risk obtaining an excess verdict that it felt it could collect directly from Kenard), PSM would be in exactly the same situation of defending the case even after tendering its policy limits. Capitol is not required to accept PSM's valuation of the case and either tender its policy limits or accept the defense of Kenard.

## **CONCLUSION**

Capitol is entitled to partial summary judgment in its favor and against PSM, and it is entitled to prevail on PSM's cross motion for partial summary judgment. The Capitol policy is excess over the PSM policy based upon the Property Management endorsement's excess insurance clause. Kenard advised Capitol that it did not want Capitol's defense and that it considered Capitol's policy excess over PSM's. Neither Kenard nor PSM is entitled to pre-tender defense costs. Tendering its policy limits does not relieve PSM of its duty to defend Kenard.

WHEREFORE, Capitol Transamerica Corporation d/b/a Capitol Indemnity Corporation, respectfully requests this Court to enter partial summary judgment in its favor and against Public Service Mutual Insurance Company

    a. declaring that:

        1. PSM's policy provides coverage for the claims asserted against Kenard in the underlying litigation;

        2. PSM is obligated under its Businessowner's Liability policy to defend and indemnify Kenard in connection with the claims asserted in the underlying litigation;

        3. PSM's Businessowner's Liability policy is the primary policy for the claims asserted against Kenard and PSM (not Capitol) has the primary obligation to defend and indemnify Kenard;

        4. Capitol's Commercial General Liability policy and its Umbrella policy are excess to PSM's Businessowner's Liability policy ;

5. Capitol is not obligated to defend Kenard in the underlying litigation so long as PSM is obligated to do so under its Businessowner's Liability policy;

6. PSM must continue to provide a defense for Kenard in the underlying litigation, and it may not withdraw from providing that defense;

7. Capitol's Commercial General Liability policy and its Umbrella policy provide coverage that is excess to PSM's Businessowner's Liability policy; and

8. Capitol is not required to reimburse PSM for the fees and costs PSM has incurred in connection with the underlying litigation;

b. And awarding Capitol the costs herein expended and for such other and further relief that this Court deems just and proper.

Respectfully submitted,

CAPITOL TRANSAMERICA CORPORATION d/b/a CAPITOL INDEMNITY CORPORATION, Defendant, by SWANSON, MARTIN & BELL, LLP, its Attorneys


/s/Linda E. Spring
SWANSON, MARTIN & BELL, LLP
1860 West Winchester Road, Suite 201
Libertyville, IL 60048
847-949-0025

Linda E. Spring/6185966
SWANSON, MARTIN & BELL, LLP
1860 West Winchester Road, Suite 201
Libertyville, Illinois 60048
Tel: 847-949-0025
Fax: 847-247-0555