UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NO.  2009-CV-2829
(HONORABLE JUDGE GRADY)

| | |
|---|---|
| PUBLIC SERVICE MUTUAL INSURANCE COMPANY, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CAPITOL TRANSAMERICA CORPORATION, d/b/a CAPITOL INDEMNITY CORPORATION, | ) ) ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

PUBLIC SERVICE MUTUAL INSURANCE COMPANY ("PSM"), by and through its undersigned attorneys, responds to and opposes CAPITOL TRANSAMERICA CORPORATION's ("CAPITOL") *Response To Plaintiff's Cross-Motion For Partial Summary Judgment And Reply In Support Of Its Motion For Partial Summary Judgment*. The Court must deny Capitol's Motion for Partial Summary Judgment and enter judgment in favor of PSM as to all relief sought in its Cross-Motion for Summary Judgment because:

1. Even if the selected/targeted tender rule applies to Non-construction cases,[1] the July 2, 2007 Lichterman letter upon which Capitol relies cannot reasonably be construed as a targeted tender of the PSM policy, as the language does not constitute a clear and knowing tender, and Ms. Lichterman herself has indicated, through affidavit, that she never intended to knowingly select PSM's coverage over Capitol's;

---

[1] Even if *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 758 N.E.2d 353 (Ill. App. Ct. 2001) applies to the present facts as Defendant contends, it is nonetheless an intermediate appellate decision which has not been adopted by the highest Illinois court.  In fact, the Illinois Appellate Court, and the United States District Court for the Southern District of Illinois have both expressly limited the targeted tender doctrine to construction cases. *Shelter Gen. Ins. Co. v. Zurich Direct*, 2008 WL 4449873, at * 8 (S.D I.L.L. 2008); *Pekin Ins. Co. v. Fid. & Guar. Ins. Co.*, 357 N.E.2d 10, 19 (Ill. App. Ct. 2005).

2. To say that the May 11, 2008 Collins letter, and similar correspondence does not constitute a tender of defense and indemnity to Capitol is wholly inaccurate under Illinois law and inconsistent with Capitol's own claims handling activities;

3. Capitol's argument that it provides excess coverage because it has two "other insurance" clauses within its policy, and PSM's has only one "other insurance" clause, is illogical and contrary to both Illinois law and basic policy interpretation;

4. Even if Capitol can establish that the "other insurance" clauses contained within its policy are simultaneously operative, neither of them create a situation in which PSM's coverage is primary while Capitol's coverage is excess; and

5. PSM is entitled to equitable contribution from Capitol for all costs, including pre-tender defense costs, as both insurers offer co-primary coverage, and the fact that PSM has undertaken to defend Kenard does not somehow relieve Capitol of its obligation, especially when Capitol's has knowingly failed to settle the case and thereby exposed its insured to excess exposure.

## ARGUMENT

I.    **Even If The Targeted Tender Rule Applies, Kenard Management Did Not Make a Knowing Targeted Tender of The PSM Policy, As Evidenced By Ms. Lichterman's Affidavit.**

Capitol goes to great lengths to make the point that *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-In-Insurance Exchange* (CHRPP) 758 N.E.2d 353 (Ill. App. Ct. 2001) stands for the proposition that the targeted/selective tender rule does not apply exclusively to construction cases. Interestingly, in its examination of CHRPP, Capitol completely ignores the fact that the court still required that the insured's declination of defense and indemnity be directed and knowing. *See CHRPP*, 758 N.E.2d 353, 357. In fact, the CHRPP court refused to rule on whether the insured, Dr. Baldoceda, effectively renounced coverage, even though Dr. Baldoceda (though his appointed defense attorney) wrote to one carrier specifically stating that:

> It is Dr. Baldoceda's wish to have his ISMI[E] coverage remain secondary; the ISMI[E] policy would be used only in the event

> that there is insufficient CHRPP coverage (primary and excess)
> to cover his entire loss."

*Id.* At 980. As discussed in PSM's Opposition to Capitol's Partial Motion for Summary Judgment and Cross Motion, a targeted tender must be a clear and knowing de-selection of coverage. *Id.* At 976; *John Burns Construction Co. v. Indiana Ins. Co.*, 727 N.E.2d 211, 215 (Ill. 2000); *Cincinnati Cos. V. West Am. Ins. CO.*, 701 N.E.2d 499, 503 (Ill. 1998).

Under the present circumstances, Kenard President Gerladine Lichterman's July 2, 2007 letter does not constitute the same knowing and targeted tender required under Illinois law for an insured to target one carrier's coverage over another's (for a more detailed discussion of this argument, please see *PSM's Opposition and Cross-Motion* at Pages 13 – 15). This is especially true, given that Ms. Licterman herself has indicated through affidavit that she never intended to make a targeted tender of PSM's coverage over that provided by Capitol. *See Lictherman Affidavit,* attached to PSM's Opposition at Exhibit 3. According to Ms. Lichterman:

> It was not my intent (by or through the letter) to waive any rights
> or protections afforded to KMC in the Capitol Insurance Company
> policies. At all times, I expected that Capitol Insurance Company
> would abide by the terms and conditions of the insurance policies
> and take all measures necessary to provide KMC with the
> protections afforded under the policies (whether my assumptions
> regarding the layers of insurance were correct or incorrect). ***More
> particularly, it was not my intent to undertake any
> election, under the so-called "targeted tender" doctrine or
> otherwise, as a result of which either insurance company
> (Public Service Mutual Insurance Company or Capitol
> Insurance Company) would be excused from providing
> and/or sharing in providing (as may be required in the
> insurance policies) for the defense or indemnification of
> KMC.*** (emphasis added).

*Id.* at ¶ 6. It is difficult to imagine how Capitol can contend that Kenard Management Corporation, through its President Geraldine Lichterman, knowingly de-selected coverage

3

afforded by Capitol for the loss, or choose PSM to provide primary coverage for that matter, when Ms. Lichterman herself has provided a sworn notarized affidavit that she never intended to do so. Capitol has not and cannot refute the clear and unequivocal statements contained in the Lichterman Affidavit.

Furthermore, that Capitol was not aware of the existence of the affidavit until PSM filed its opposition does not change the fact that Ms. Lichterman did not knowingly de-select Capitol's coverage. At the time Capitol received the July 2007 correspondence, it did not recognize or acknowledge the letter as a targeted tender. In fact, none of the contemporaneous notes in the Capitol claims file even refer to this concept. *See Claims Notes attached hereto at Exhibit 1.* Moreover, at no time did anyone at Capitol conduct an analysis of the Other Insurance provisions. That Capitol recognized that it had a duty to defend is confirmed by its own claims notes, in which Capitol employee Barb Felcan stated that she would give to supervisor Joe McCarthy a copy of the Capitol policy to "review and approve weather (misspelled) or not he agrees to a 50/50 defense basis" with PSM. *See Claims Notes attached hereto at Exhibit 1, at p. 5.* Furthermore, Joe McCarthy sent an email to Capitol employee Curt Hellmer approximately nine days after Ms. Felcan's inquiry with a subject line that stated: "Re: Request for Status, **Insured re-tendered defense**, what is our response?" (Emphasis added). *See Electronic Correspondence Attached hereto at Exhibit 2.*

Despite these clear statements by Capitol claims handlers, counsel now seeks to retroactively justify Capitol's inaction by relying on the targeted tender rule. To adopt Capitol's position under these circumstances would essentially allow insurers to disregard their duty to defend and indemnify under any circumstance in which the insured sent a

letter that made a simple assumptive statement about the insured's understanding of his or her insurance coverage. Thus, the court should deny Capitol's Partial Motion for Summary Judgment, and alternatively grant PSM's Cross-Motion for Summary Judgment.

II. **Kenard Tendered Defense And Indemnity to Capitol, As Evidenced By the Language Of Mr. Collins's Letter and the References To Kenard's Defense Tender Contained Within Capitol's Claims Handling Materials.**

Allowing Capitol to so narrowly define a defense and indemnity tender would not only fly directly in the face of Illinois law, but would also make it near impossible for insureds to actually tender defense and indemnity to their carriers. As discussed in PSM's Opposition to Capitol's Partial Motion for Summary Judgment, and Cross-Motion For Summary Judgment at page 15, Illinois courts have held that an insurer's duty to defend arises with "actual notice of a claim against the insured." *See John Burns*, 727 N.E.2d at 215. Here, Capitol received numerous notifications from multiple entities, including, but not limited to the following:

(1) January 11, 2007 from its own agent, Heil and Heil Insurance Agency providing a notice of loss;

(2) May 11, 2009 from Kenard's corporate counsel, Attorney Collins stating "*Your company has a fiduciary duty to its policyholder to defend the case,*" and "*we trust that you will not provide counsel of less standing than the attorneys now provided [by PSM]*"; and

(3) February 8, 2009 from Kenard Defense counsel, Bradford Purcell, stating "the purpose of this letter is to request confirmation that Capit[o]l CGL Policy. . . and the corresponding umbrella policy covers Kenard Management.

*See Correspondence attached hereto at Exhibit 3.* As discussed in the previous section, that Capitol recognized that it had a duty to defend Kenard is confirmed by its own claims handling materials, in which its employees sent correspondence to each other specifically stating that the insured tendered defense, and also inquired into whether Capitol should be splitting defense costs. *See Documents attached at Exhibits 1 and 2.*

Capitol makes two points in responding to PSM's assertion that Kenard did in fact tender defense and indemnity to Capitol: (1) that PSM, as an insurance carrier, cannot tender defense and indemnity to Capitol, as this creates a third party beneficiary situation; and (2) that the Collin's letter constitutes a demand for settlement and not a demand for defense. As an initial matter, Capitol's response ignores both the notice of loss from its own insurance agent, and the letter from Kenard defense counsel Bradford Purcell seeking coverage confirmation. Furthermore, Capitol's interpretation of Attorney Collins's letter as a demand for settlement and not defense completely disregards the language contained within Collin's letter stating that Capitol has a duty to defend its policyholder and requesting that it provide defense counsel that is at least as competent as counsel currently provided for by PSM. Additionally, the Capitol claims handlers assigned to this claim considered these materials a tender of defense and indemnity, otherwise they would have not likely made reference to splitting defense cost on a 50/50 basis in the claims notes. *See Exhibit 1.* Finally, regardless of the nature or origin of the correspondence written to Capitol, or Capitol's understanding as to the meaning of that correspondence, the fact remains that Capitol retained defense counsel for the express purpose of defending the claims against Kenard. Clearly, someone at Capitol thought that Kenard had tendered defense and indemnity to it.

Adopting Capitol's narrow approach as to determining what constitutes a tender would certainly leave a lot of insureds out in the cold. If a notice of loss from a carrier's own agent, a letter from insured's personal counsel requesting competent counsel, and a letter from insured's defense counsel seeking coverage confirmation do not constitute a duty triggering notice of defense under Illinois law, then it is hard to imagine what an insured has to do to actually tender defense and indemnity to its carrier. Thus, it makes little sense to adopt Capitol's position that defense was never tendered to Capitol in this matter, and PSM is therefore entitled to summary judgment on this particular issue.

III.     **The "Other Insurance" clause contained within Capitol's Real Estate Property Managed Endorsement Supersedes The "Other Insurance" Clause Contained Within The Body of The Policy, Rendering It The Controlling "Other Insurance" Provision.**

Although it is not entirely clear, it appears that Capitol takes the position that its policy contains two Other Insurance clauses which are simultaneously effective, and that the Other Insurance clause contained within the body of the policy accounts for coverage relating to liability arising out of general administrative activities, while the Other Insurance clause contained in the Real Estate Property Management Endorsement covers losses arising out of Kenard's property management activities. Capitol appears to go on to argue that PSM's analysis only relates to the Other Insurance clause contained within the body of the policy and the Other Insurance clause contained within the Endorsement remains standing unopposed.

As an initial matter, PSM's analysis in its Opposition and Cross-Motion for Summary Judgment focused squarely upon the language of the Real Estate Property Management Endorsement (*See PSM's Opposition* at pp. 18-24). Thus, Capitol's claim that the Other Insurance clause within the Endorsement stands unopposed is inaccurate and, to be frank,

a bit confusing. If anything, PSM's Opposition and Cross-Motion disregards the Other Insurance clause contained within the body of the policy because it is supplanted by the Other Insurance clause in the Endorsement.

There is no doubt that the Other Insurance clause contained within the Real Estate Property Managed Endorsement supersedes the Other Insurance clause contained within the body of the policy, and ultimately controls the Capitol policy on the order of coverages issue. Under Illinois law, "if there is a conflict between the provisions of a policy proper and an attached endorsement, the endorsement controls." *G.E. Mathis Co. v. Centennial Ins. Co.*, 80 Ill.App.3d 610, 624 (Ill. App. Ct. 1980). *See also Tribune Co. v. Allstate Ins. Co.*, 715 N.E.2d 263, 268, (Ill. App. Ct. 1999); *Central Illinois Public Service Co. v. Allianz Underwriters Ins. Co.*, 608 N.E.2d 155, 158, (Ill. App. Ct. 1992). In the present matter, the body of the Capitol policy contains the following language:

    a. Primary Insurance
       This insurance is primary except when b. below apples. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.

    b. Excess Insurance
       This insurance is excess over:

       (1) any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, installation Risk or similar coverage for "your work;"
         (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
         (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
         (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft, to the extent not subject

> to Exclusion g. of Section I – Coverage A – Bodily injury and property damage liability;

> (2) Any other primary insurance available to you covering liability for damages arising out of the premises, or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

Yet, the language of the Real Estate Property Management Endorsement provides as follows:

> **Endorsement – Real Estate Property Managed**

> This endorsement modifies insurance provided under the following:

> Commercial General Liability Coverage Part

> This insurance does not apply to "property damage" you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

> With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

As can be seen in the above two provisions, the Other Insurance clause contained within the body of the Capitol policy provides that the policy is primary unless one of the conditions in Section B applies - which is not the case here. By contrast, the language of the Real Estate Property Managed Endorsement provides that the coverage is excess over any other valid and collectible insurance. It is this provision that must be considered in determining whether a conflict exists with the Other Insurance provisions in the PSM policy.

As Capitol makes clear on page 9 of its Response, Kenard's alleged "liability for the accident flows directly from its management of the property." As Capitol confirms, the Other Insurance clause contained within the Real Estate Property Managed endorsement

applies, and purports to render the Capitol policy as providing excess coverage. As discussed above, this directly conflicts with the language of the Other Insurance provision contained with the body of the policy which, under the present circumstances, renders Capitol's coverage primary. Thus, under Illinois law, the language of the Real Estate Property Managed Endorsement supersedes the language contained within the body of the policy, and is therefore the only applicable Other Insurance clause under the present circumstances. This provision is relevant for the purpose of Other Insurance analysis. For this reason, PSM's Opposition and Cross-Motion focuses exclusively upon the Real Estate Property Managed Endorsement. Furthermore, even if the court were to give credence to Capitol's argument that both Other Insurance clauses are somehow operative, the Real Estate Property Managed Endorsement would still exclusively apply, as Capitol has admitted in its own Response, that Kenard's alleged liability arises out of its management of the property (*See Capitol's Response*, at p. 9) and not out of administrative or other like activity.

Thus, Capitol's assertion that both of its Other Insurance clauses are operative, and at least one of them stands unopposed is flawed. The Court should therefore grant summary judgment in favor of PSM, based upon its position taken in its Opposition and Cross-Motion that each policy's operative Other Insurance clause renders it as a co-primary carrier with a joint duty to defend and indemnity Kenard in the underlying litigation.

IV. **Even If Capitol Can Somehow Prove That Both "Other Insurance" Clauses Are Operative, Neither Clause – According To Its Own Language – Renders Capitol's Coverage Excess Over PSM's.**

Even if Capitol can demonstrate that the Other Insurance clause in the Real Estate Property Managed Endorsement does not override the Other Insurance clause contained within the body of the policy, neither clause renders Capitol's coverage excess over PSM's. As discussed in the section above, the language of the Other Insurance clause contained within the body of Capitol's policy essentially renders it as providing primary coverage for the loss (with a primary duty to defend and indemnify its insured). Specifically, this clause states that "this insurance is primary except when b. below apples." None of the conditions listed in section b. apply, meaning that the Other Insurance Clause contained within the body of the Capitol policy will unambiguously serve as primary coverage to other valid and collectable insurance. By contrast, PSM's Other Insurance clause states that:

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of insurance.

2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

3. When this insurance is excess we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Thus, PSM's policy unambiguously provides excess coverage over other sources of coverage, such as the Capitol policy in this case.

Turning to the Other Insurance clause contained within Capitol's Real Estate Property Managed Endorsement, as discussed extensively in Plaintiff's Opposition and Cross-Motion for Summary Judgment, this Other Insurance provision is mutually repugnant to the Other Insurance provision contained within the PSM policy, as both clauses purport to provide excess coverage for the claims against Kenard arising from the underlying loss. As a result, these two clauses cancel each other out, and each insurer is obligated to share in the costs associated with defending and indemnifying the insured against the underlying claims. *See PSM's Opposition and Cross-Motion,* at p. 18.[2]

In other words, as between the PSM Other Insurance clause and the Capitol "Main Body" Insurance clause, the provisions do not conflict with each other and unambiguously establish that Capitol's coverage is to serve as primary coverage, while PSM's coverage is to provide excess coverage for this loss. However, as between PSM's Other Insurance clause and the Other Insurance clause contained within Capitol's Real Estate Property Managed Endorsement, the provisions are mutually repugnant and cancel each other out, leaving each insurer standing as co-primary carriers with joint obligations to share in Kenard's defense and potential indemnification. Put simply, Capitol is either the sole primary carrier or a co-primary carrier, and under neither circumstance is its coverage rendered as excess over PSM's. For this reason, the Defendant's Partial Motion for Summary Judgment should be denied and the court should grant Plaintiff's Cross-Motion for Summary Judgment. Capitol has wrongly refused to defend its insured.

---

[2] As PSM has already discussed this issue extensively in its Opposition and Cross-Motion, it will refrain from again doing so here. For a complete analysis of the Capitol Real Estate Property Managed Endorsement Other Insurance clause as compared to the PSM Other Insurance clause, please see PSM's Opposition and Cross-Motion at pp. 18-24.

V.     **PSM Is Entitled To Equitable Contribution From Capitol For All Costs, Including Pre-Tender Defense Costs, As Both Insurers Offer Co-Primary Coverage And PSM's Stepping Up To The Plate And Defending Kenard Does Not Relieve Capitol Of Its Obligation Under Illinois Law.**

Equity requires that Capitol contribute to all costs incurred by PSM to date, including pre-tender defense costs. "Equitable contribution is an equitable principle arising among co-insurers which permits one who has paid the entire loss to be reimbursed from other insurers that are also liable for the loss." *CHRPP*, 758 N.E.2d 353, 362 (Ill. App. Ct. 2001); *Schal Bovis, Inc. MKDG v. Casualty Ins. Co.*, 732 N.E.2d 1179, 1186 (Ill. App. Ct. 2000). "The reason for this rule is that one insurer has paid a debt that is equally owed by the other insurers." *Id.* The fact that one insurer undertakes the burden of defending and indemnifying the insured does not mean that the insurer is a volunteer. *CHRPP*, 758 N.E.2d 353, 362

In order for an insurer to recover in a contribution action, the policies must cover a risk on the same basis and there must be identity between the policies as to parties and insurable interests of risks. *Id.* Here, it is undisputed that both Capitol and PSM issued general liability policies which insure the same entity, Kenard Management Corporation, against the very risk which resulted in the claims that have now been brought against Kenard Management. At no point has Capitol contended that it does not owe defense and indemnity to Kenard, but instead that it just does not yet owe defense and indemnity at this time. In fact, Capitol originally retained defense counsel and proceeded as though it was a primary carrier responsible for covering the loss at issue, and only upon learning of PSM's involvement did it reverse its position and claim that it does not yet owe a duty to defend and indemnify Kenard. Therefore, even though PSM stepped up and defended Kenard, PSM did not volunteer to pay all costs or cover Capitol's obligations. In other words, PSM is

entitled to equitable contribution from Kenard for all costs associated with defending this claim, including all pre-tender defense costs.

## **CONCLUSION**

For the above reasons, PSM respectfully requests that the Court grant Plaintiff, Public Service Mutual Insurance Company's Cross-Motion for Partial Summary Judgment and deny the Defendant's Partial Motion for Summary Judgment.

Respectfully submitted,
Plaintiff,
Public Service Mutual Insurance Company


By:   _/s/ Howard J. Fishman_____
One of its attorneys

Dated: 7/30/2010


Howard J. Fishman (Illinois Bar No. 6216066)
Aronberg Goldgehn Davis & Garmisa
330 North Wabash, Suite 1700
Chicago, Illinois 60611
(312) 828-9600
(312) 828-9635 (Fax)

_Admitted Pro Hac Vice_
John A. Donovan III
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108
617-523-6010


## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July 2010, that PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT was electronically filed with the Court using the ECF system.

_/s/ Howard J. Fishman_____
Howard J. Fishman

S:\MAGNA CARTA v. KENARD MANAGEMENT - AM-970-2669\Opp to Capitol SJM\PSM's Reply to Capitol's response to PSM's cross-motion for SJM.doc