IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PUBLIC SERVICE MUTUAL INS., CO., )
individually and as subrogee of )
KENARD MGMT. CO., )
                                 )
         Plaintiff,              )
                                 )
    v.                           )   No. 09 C 2829
                                 )
CAPITOL TRANSAMERICA CORP.,      )
d/b/a CAPITAL INDEM. CORP.,      )
                                 )
         Defendant.              )

## MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment. For the reasons explained below we grant plaintiff Public Service Mutual Insurance Company's ("PSM") motion in part, and deny it in part, and deny defendant Capitol Transamerica Corporation's ("Capitol") motion.

## BACKGROUND

This insurance coverage dispute arises from a wrongful death action filed against the parties' mutual insured, Kenard Management Corporation ("Kenard"). (Def.'s Stmt. of Material Facts in Supp. of Mot. for Partial Summ. J. (hereinafter "Def.'s Stmt.") ¶ 16.) On January 1, 2007 Michael Doyle fell to his death from the porch of the third-floor apartment located at 3180 North Clark Street, Chicago, Illinois. (Id. at ¶ 17.) Mr. Doyle's estate alleges that

Kenard — the building manager — negligently failed to install building-code compliant guardrails on the porch that would have prevented his death. (Doyle v. Kenard Corp., No. 07 L 1988 (Compl.), attached as Ex. C to Def.'s Stmt., at 2, 4-5 (the "Underlying Lawsuit").) Kenard managed the property at that time pursuant to a Management Agreement with the property's owner, Belmont Clark Partners ("BCP"). (Def.'s Stmt. ¶ 6; see also Mgmt. Agmt., dated April 17, 2006, attached as Ex. D to Def.'s Stmt.) The Management Agreement contains a "Save Harmless" provision requiring BCP to purchase an insurance policy naming BCP and Kenard as "co-insureds." (Mgmt. Agmt. ¶ 10.) The relationship between this provision and PSM's policy, which names Kenard and "Corus Bank #141" as insureds, is not entirely clear. Neither party explains who or what "Corus Bank #141" is, or what it has to do with BCP. Regardless, it is undisputed that PSM's policy was in place when Mr. Doyle died and that the policy covers Kenard's liability for "bodily injury" at the 3180 North Clark Street premises. At that time Kenard was also covered by two insurance policies issued by Capitol: a Commercial General Liability Coverage policy and a Commercial Umbrella General Liability Coverage policy. (Def.'s Stmt. ¶¶ 11, 15.) These policies likewise cover Kenard's liability for "bodily injury" at the Clark Street premises. (Def.'s Resp. to Pl.'s Stmt. of Add'l Material Facts ¶¶ 2-3.)

Capitol was notified on January 11, 2007 of a potential claim against Kenard stemming from Mr. Doyle's death. (Def.'s Stmt. ¶ 20; Fax from S. McMaster to Capitol Indem., dated Jan. 11, 2007, attached as Ex. H to Def.'s Stmt., at 1.) Capitol acknowledged the notice in a letter to Kenard dated January 16, 2007. (Def.'s Stmt. ¶ 21; Letter from R. Miller to Kenard, dated Jan. 16, 2007, attached as Ex. H to Def.'s Stmt., at 4.) Capitol retained a firm to investigate the potential claim, and retained a lawyer to represent Kenard after Mr. Doyle's estate filed the Underlying Lawsuit in the Circuit Court of Cook County, Illinois on February 22, 2007. (Id. at ¶¶ 22-23.) The attorney Capitol retained to defend Kenard soon learned that another law firm — retained by PSM — had entered an appearance on Kenard's behalf. (Id. at ¶¶ 23, 25.)

It appears that Kenard initially failed to respond to Capitol's requests for information about the claim. (See Letter from H. Russo to R. Miller, dated Mar. 5, 2007, attached as Ex. H to Def.'s Stmt.; Fax from H. Russo to K. Wenkus, dated April 4, 2007, attached as Ex. H to Def.'s Stmt.; Letter from H. Russo to R. Miller, dated April 26, 2007, attached as Ex. H to Def.'s Stmt.)[1] Then, in a letter dated July 2, 2007, Kenard's president Geraldine Lichterman informed Capitol's investigator that: (1) the Management Agreement required the building owner to obtain insurance

---

[1] PSM denies that Kenard was unresponsive, (see Pl.'s Resp. to Def.'s Stmt. ¶ 24), but does not cite any evidence to the contrary.

protecting Kenard; (2) a policy "was put into effect" with PSM during the relevant period; and (3) PSM had selected an attorney "to defend [Kenard's] interests" in the Underlying Lawsuit. (See Letter from G. Lichterman to H. Russo, dated July 2, 2007, attached as Ex. H to Def.'s Stmt.) Ms. Lichterman went on to state her "understanding" of the relationship between the PSM and Capitol policies:

> It is my understanding that [Capitol's primary and umbrella policies] are excess over any other insurance we may have. We are assuming the Policy with Public Service Mutual Insurance Company is primary insurance.

(Id.) In November 2007 — approximately four months after Ms. Lichterman's letter — PSM first demanded that Capitol contribute to the cost of Kenard's defense. (Pl.'s Stmt. of Add'l Facts ¶ 12.) The record does not indicate what, if anything, came of PSM's initial demand. Then, in a series of letters in early 2009, PSM renewed its demand that Capitol contribute to Kenard's defense. (Id. at ¶ 15.) Kenard, in a letter dated May 11, 2009, likewise demanded that Capitol acknowledge its duty to defend Kenard. (See Letter from G. Collins to J. McCarthy, dated May 11, 2009, attached as Ex. 6 to Pl.'s Resp. ("Your Company has a fiduciary duty to its policyholder to defend the case and not to put its own interest ahead of that of the policyholder.").)

This flurry of activity was evidently sparked by the plaintiff's offer to settle the Underlying Lawsuit in exchange for $3 million — the combined policy limits of the three policies at

issue. (Pl.'s Stmt. of Add'l Facts ¶ 19.) PSM has indicated its willingness to offer its policy limits, Capitol has not. (Id. at ¶¶ 20-21.) Both parties have requested declaratory judgment concerning the parties' defense and indemnity obligations. (See Compl. (Count I); Counterclaim (Count I).) In their cross-motions for partial summary judgment the parties dispute only whether Capitol has a duty to defend Kenard in the Underlying Lawsuit.[2]

### DISCUSSION

#### A. Legal Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary

---

[2] As Capitol points out, the parties have not settled the Underlying Lawsuit and the court has not entered judgment. However, our discussion of the policies' relative priority is certainly relevant to the ultimate question of indemnification. See infra Part C.

judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B.  Targeted Tender**

Capitol contends that Kenard tendered its defense to PSM exclusively. When an insured has coverage under multiple insurance policies, it may choose a single insurer to defend and indemnify it and forego coverage under its other policies. John Burns Construction Co. v. Indiana Ins. Co., 727 N.E.2d 211, 215 (Ill. 2000).[3] When an insured has made such an election, the "targeted" insurer may not demand contribution from those insurers whose coverage the insured has elected to forgo. Id. at 216-17. This rule protects the insured's "paramount right . . . 'to seek or not to seek an insurer's participation in a claim as the insured chooses.'" Alcan United, Inc. v. West Bend Mutual Ins. Co., 707 N.E.2d 687, 692 (Ill. App. 1999) (quoting Institute of London Underwriters v. Hartford Fire Ins. Co., 234 N.E.2d 1311, 1316 (Ill. App. 1992)). As a corollary to this rule, an insured may later "deactivate coverage with a carrier previously selected for purposes of invoking exclusive coverage with another carrier." Id. at 568.

---

[3] Capitol and PSM, Wisconsin and New York corporations respectively, agree that their dispute is governed by Illinois law.

Capitol's duty to defend Kenard was triggered when it received actual notice of the suit in February 2007. See Cincinnati Co. v. West American Ins. Co., 701 N.E.2d 499, 505 (Ill. 1998).[4] Consistent with its obligations, Capitol retained an investigator and defense counsel and attempted to contact Kenard. The question is whether, after Capitol's duty to defend was triggered, Kenard "deactivated" Capitol's policy in favor of exclusive coverage under PSM's policy. In John Burns the insured explicitly indicated that it looked "solely" to one insurer for defense and indemnification, and told its other insurer that it did not want it "to become involved in the suit." John Burns, 727 N.E.2d at 914. By contrast, it is clear from Ms. Lichterman's letter that she was only expressing her understanding of the relationship between the various policies. Ms. Lichterman is not an attorney, (Aff. of G. Lichterman, attached as Ex. 3 to Def.'s Mem., ¶ 1), and there is no evidence that she has a background in the insurance industry. See Cincinnati Co., 701 N.E.2d at 504-05 (recognizing that insurers are usually more versed in insurance law than even sophisticated insureds). Indeed, she states in her affidavit that she had not read any of the policies at issue before drafting the letter. (Aff. of G. Lichterman, attached as Ex. 3 to Def.'s Mem.) Based upon her layperson's understanding of Kenard's insurance coverage

---

[4] Insofar as Capitol argues that Kenard was required to "tender" the lawsuit to Capitol for defense and indemnification, (Def.'s Mem. at 9), that is not the law in Illinois. See Cincinnati Co., 701 N.E.2d at 505 (considering and explicitly rejecting that requirement).

Ms. Lichterman concluded that PSM's policy was primary. This cannot fairly be described as a "knowing choice" to forgo coverage under Capitol's policy. <u>Alcan</u>, 707 N.E.2d at 694. Ms. Lichterman's letter may have been equivocal, especially in light of Kenard's early unresponsiveness. But the onus was on Capitol to seek clarification. <u>Cincinnati Co.</u>, 701 N.E.2d at 505 (citing <u>Towne Realty, Inc. v. Zurich Ins. Co.</u>, 548 N.W.2d 64, 67 (Wis. 1996)). We conclude that Kenard did not select PSM exclusively for defense and indemnification.

**C.  Whether Capitol's General Liability Policy is Excess to PSM's[5]**

In the alternative, Capitol argues that Ms. Lichterman was correct and that it did not have a duty to defend Kenard because its general liability policy is excess to PSM's. Under Illinois law the primary insurer, not the excess insurer, has the duty to defend the insured. <u>See</u> <u>Royal Ins. Co. v. Process Design Associates, Inc.</u>, 582 N.E.2d 1234, 1245 (Ill. App. Ct. 1991). "[E]xcess coverage may arise 'by coincidence' in situations where multiple primary insurance contracts apply to the same loss [or occurrence]. In these instances, courts examine the 'other insurance' clauses contained in each of the policies to determine which is primary and which is excess." <u>Roberts v. Northland Ins.</u>

---

[5]  In its complaint, PSM requests a declaration that its policy is excess to Capitol's. (Compl. Count II (¶ 4).) In its cross-motion for summary judgment it argues instead that the two policies are "co-primary." And the parties appear to agree that Capitol's umbrella policy is excess. The sole question, then, is whether Capitol's general liability policy is excess to PSM's, as Capitol argues, or whether the two policies are co-primary.

Co., 705 N.E.2d 762, 769 (Ill. 1998) (Freeman, C.J., concurring in part and dissenting in part) (internal citation omitted). PSM's "other insurance" provision states, in pertinent part:

> If there is other insurance covering the same loss or damage, we will pay only for the amount of the covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of insurance.

(PSM General Liability Policy, attached as Ex. E to Def.'s Stmt., at 63.) And here is the relevant portion of Capitol's "other insurance" provision:

> This insurance is excess over:
>
> \*   \*   \*
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(Capitol General Liability Policy, attached as Ex. F to Def.'s Stmt., at 51.)[6] Capitol's policy also contains a "Real Estate Management Endorsement:"

> With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

(Id. at 62.)

---

[6] Capitol's policy states that it is excess in certain other circumstances, but only subsection (2) is evenly arguably applicable.

Capitol's real estate management endorsement and PSM's "other insurance" clause both apply here. The endorsement applies because the Underlying Lawsuit arises out of Kenard's management of the apartment building where Mr. Doyle fell to his death. And PSM's "other insurance" clause applies because Capitol's policy is "other insurance covering the same loss or damage." (See Def.'s Resp. to Pl.'s Stmt. of Add'l Facts ¶ 3.) But Capitol's "other insurance" clause does not apply. Even assuming that BCP procured PSM's policy pursuant to its obligation under the Management Agreement, cf. supra p. 2, Capitol's "other insurance" clause states that it is excess to primary insurance "for which you have been added as an additional insured by attachment of an endorsement." An "endorsement" is "[a]n amendment to an insurance policy; a rider." Black's Law Dictionary 607 (9th ed. 2009). As far as PSM's policy discloses, Kenard is a "primary" not an "additional" insured, and it was not added by attachment of an endorsement to an existing policy. Id. at 879 (A "primary insured" is an "individual or entity whose name appears first in the declarations of an insurance policy," versus an "additional insured" who is "[a] person covered by an insurance policy but who is not the primary insured."); see also Ohio Cas. Ins. Co. v. Oak Builders, Inc., 869 N.E.2d 992, 995 (Ill. App. Ct. 2007) ("If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written.").

Capitol insists that its endorsement trumps PSM's "other insurance" provision, relying heavily on Hartford Fire Ins. Co. v. Everest Indem. Ins. Co., 861 N.E.2d 306 (Ill. App. 2006). We must discuss Hartford in detail to explain why it does not support Capitol's position. In Hartford two insurance companies — Hartford Fire Insurance Company ("Hartford") and Everest Indemnity Insurance Company ("Everest") — issued policies covering three defendants sued in connection with a building fire. Id. at 307-08. It was undisputed that those defendants, apparently the building's manager and its owners, qualified as insureds under Hartford's policy. Id. at 307. Everest's named insured provided security services (including protection "against fire") pursuant to a contract with the building's manager. Id. at 308. The manager and the owners were named as additional insureds on Everest's policy, but "only with respect to liability arising out of [the named insured's] ongoing operations performed for [those additional] insured[s]." Id. As Capitol points out, Hartford's policy contained an "other insurance" provision and a real estate property management endorsement identical to Capitol's in this case. Id. at 307-08. And Everest's policy, like PSM's, contained its own "other insurance" provision. Id. at 308. The additional insureds tendered the underlying lawsuits to both Everest and Hartford for defense and indemnification. Id. at 309. Everest acknowledged its obligation to defend one of the additional insureds (the opinion

does not explain why), but defended the other two additional insureds under a reservation of rights. Id. Hartford later sought a declaration that Everest had the primary duty to defend the underlying lawsuits and that Hartford's policy was excess to Everest's. Id. The trial court granted Hartford's motion for summary judgment, and the appeals court affirmed. Id. at 310.

On appeal, Everest conceded that Hartford's policy was excess to its own and that it (Everest) had the primary duty to defend the additional insureds for claims "arising out of" its named insured's operations (so-called "derivative" claims). Id. at 311, 312. This concession appears to have been based on language in Everest's policy stating that it was "primary and noncontributory" when so designated in a written agreement with another party (in that case, the named insured's security agreement with the building manager). Id. at 308-09. But Everest argued that it had no duty whatsoever to defend claims based on the additional insureds' own negligence ("direct" claims), which were arguably beyond its policy's coverage. Id. at 309-11. The appeals court rejected that argument, holding that Everest could not parse the underlying lawsuit into "derivative" and "direct" claims, defending the former but not the latter. See id. at 310 ("[I]f several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of the several theories is within the potential coverage of the

policy."). That holding is irrelevant to our case, and there is nothing in PSM's policy comparable to the provision of Everest's policy making it "primary and noncontributory." Hartford is inapposite.[7]

Both PSM's "other insurance" clause and Capitol's real estate property management endorsement are "excess" clauses. That is, "they allow[] coverage only 'over and above' other insurance." Ohio Cas., 869 N.E.2d at 995 (quoting Putnam v. New Amsterdam Cas. Co., 269 N.E.2d 97, 99 (Ill. 1970)). Where, as here, "two policies contain the same sort of 'other insurance' clause, the clauses will be deemed incompatible" and "cancel each other out." Id. at 997 (citation and internal quotation marks omitted).[8] The fact that, in this case, one provision is labeled "other insurance" and the other is styled as an "endorsement" does not change the analysis. Id. (concluding that two "excess" clauses were "mutually repugnant"

---

[7] Capitol also cites several cases from other jurisdictions, only one of which is arguably on point. See State Farm Fire & Cas. Co. v. Amer. Econ. Ins. Co., No. CIVA04CV02587MSK-BNB, 2006 WL 521784 (D. Colo. Mar. 2, 2006). The State Farm court concluded that a real estate property management endorsement similar to Capitol's controlled over the "other insurance" provision of a competing policy. State Farm is arguably distinguishable because the "other insurance" clause in that case was triggered only by other "primary" insurance. Id. at *4. PSM's "other insurance" provision is triggered by any other insurance covering the same loss, and it is undisputed that Capitol's policy covers the loss here. (See Def.'s Resp. to Pl.'s Stmt. of Add'l Facts ¶ 3.) But insofar as the court purported to give one "excess" provision priority over another, it is inconsistent with Illinois law. See infra.

[8] Capitol insists that its endorsement is redundant if it is read as "simply another 'other insurance' clause." (Def.'s Mem. at 14.) But it reaches this conclusion by relying on labels and ignoring the actual language of these provisions. The endorsement applies in some circumstances that Capitol's "other insurance" clause does not — this case being one example — and vice versa. We have not created any internal inconsistency by treating the endorsement as an "excess" insurance clause (which it plainly is) and comparing it with PSM's own "excess" insurance clause.

even though they did not contain "identical verbiage"); accord Peerless Ins. v. Vermont Mutual Ins. Co., 849 A.2d 100, 102 (N.H. 2004) (concluding that an "other insurance" provision and a real estate property management endorsement were "mutually repugnant"). Disregarding the "incompatible" provisions in this case, both policies provide primary coverage for the Underlying Lawsuit, both insurers have a duty to defend Kenard, and they must share the cost of its defense.[9] Ohio Cas., 869 N.E.2d at 997 (In cases where the "other insurance" clauses cancel each other out, "the loss is prorated between the policies."). PSM states that to date it has paid $89,816.12 in attorneys fees, citing a "Vendor Payment List" that lists only the name of the "vendor" (law firm) and the amounts paid. Capitol appropriately demands more information. (Def.'s Resp. to Pl.'s Stmt. of Add'l Facts ¶ 18.) We hold today only that Capitol must share the costs of Kenard's defense without expressing an opinion at this point concerning the reasonableness of the fees and costs PSM has incurred to date.[10]

One final matter. In its cross-motion for summary judgment PSM argued that it was free to stop defending Kenard because it had

---

[9] In a "small minority of jurisdictions" courts attempt to rank the competing policies according to other criteria when their "other insurance" clauses are incompatible. Peerless, 849 A.2d at 103 (collecting cases). Applying that standard, Capitol's reliance on the relative premiums of the two policies might be relevant. But Illinois has not adopted that test. Cf. Ohio Cas., 869 N.E.2d at 997 (concluding without further analysis that two policies with "mutually repugnant" other-insurance clauses were co-primary); accord Peerless, 849 A.2d at 103.

[10] PSM contends that Capitol is liable for 50% of the cost of Kenard's defense, and Capitol has not suggested any other ratio.

offered its policy limits to settle the Underlying Lawsuit. (Pl.'s Mem. at 26.) In response Capitol cites <u>Conway v. Country Cas. Ins. Co.</u>, 442 N.E.2d 245, 247 (Ill. 1982), which held that an insurer is not "discharged from its duty to defend its insured simply by the payment of the policy limits." Because PSM does not address <u>Conway</u> or even mention its policy-limits argument in its reply brief, we conclude that PSM has waived that argument.

## **CONCLUSION**

Defendant's motion for partial summary judgment (32) on Count I of its counterclaim is denied. Plaintiff's cross-motion for partial summary judgment (36) on Count I of its complaint is granted in part, and denied in part. The court finds and declares as follows:

1. Capitol and PSM provide co-primary insurance covering the claims asserted against Kenard in the Underlying Lawsuit.

2. Both Capitol and PSM have a duty to defend Kenard in the Underlying Lawsuit.

3. Capitol and PSM must share the cost of Kenard's defense 50/50, including fees and costs that PSM has already expended defending Kenard in the Underlying Lawsuit.

4. PSM's offer of its policy limits does not relieve its duty to defend Kenard.

A status hearing is set for November 24, 2010 at 11:00 a.m.

DATE:   November 17, 2010

ENTER:   _____
         John F. Grady, United States District Judge